STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES and Northern Adjusters, Inc., Petitioners,

v.

Lee DUPREE, Respondent.

No. 6047.

Supreme Court of Alaska.

May 13, 1983.

---

Michael A. Barcott, Faulkner, Banfield, Doogan & Holmes, Anchorage, for petitioners.

Millard F. Ingraham, Fairbanks, for respondent.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

AS 23.30.220(2) provides that the average weekly wage of an injured employee is that most favorable to the employee calculated by dividing fifty-two into the total wages earned in any one of the three calendar years immediately preceding injury.[1] Departure from this formula is sanctioned when the Alaska Workers' Compensation Board determines that the employee's average weekly wage cannot be "fairly calculated" under subsection (2).[2] AS 23.30.220(3). At issue in this case is whether Dupree's average weekly wage was fairly calculated under that section because application of the three year rule resulted in a compensation award substantially in excess of her after-tax salary on the date of injury. We hold that Dupree's average weekly wage was fairly calculated under subsection (2) and affirm.

The facts in this case are not contested. Lee Dupree was injured in the course and scope of her employment in November 1978. At that time, Dupree was earning approximately $300 per week. In 1976, however, Dupree earned $538 per week, that figure reflecting her employment on the pipeline project. Based on her 1976 earnings, Dupree's disability award under subsection (2) was $359 per week, an amount in excess of her salary when the disability arose.

1. The average weekly wage figure derives its importance from the fact that a temporarily but totally disabled employee draws 66⅔% of his average weekly wage in disability payments. AS 23.30.185. Thus, the greater the claimant's average weekly wage, the greater the compensation award.

2. As amended in 1977, AS 23.30.220 provides:

Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of injury is the basis for computing compensation and is determined as follows:

(1) Repealed by § 11 ch. 75 SLA 1977

(2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board; . . . .

Dupree's employer and its workers' compensation carrier requested that the Board reduce Dupree's weekly compensation rate to reflect accurately her wage loss due to injury. The Board complied, setting Dupree's average weekly wage under subsection (3) at $200 per week, an amount commensurate with her after-tax salary on the date of injury. Dupree appealed to the superior court. That court reversed, concluding that the Board lacked the authority to modify an award calculated under subsection (2) and based entirely on documented past earnings. Dupree's employer and its workers' compensation carrier petitioned for review.

Until amended in 1977, the Alaska wage basis statute closely resembled a model statute first enacted in New York and still in force in numerous jurisdictions.[3] Under this generic statute, an employee's average annual earning capacity was fixed according to the weekly wage earned at the time of injury. If, for some reason, the weekly wage at that time was not representative of actual annual earning capacity, earnings of similarly situated employees were used to arrive at an approximation of the claimant's annual earning capacity.[4]

The amended Alaska statute departs significantly from the traditional wage basis statute. Rather than focusing on the employee's weekly earnings at the time of injury, the statute calls for a survey of the employee's earnings in the three calendar years immediately preceding injury. The

**3.** Prior to being amended, AS 23.30.220 provided:

Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of injury is the basis for computing compensation, and is determined as follows:

(1) if at the time of the injury the employee had been employed in the same or similar employment for 27 weeks immediately before the injury, the average weekly wage is the weekly wage at the time of injury.

(2) if at the time of the injury the employee had been employed in the same or similar employment for less than 27 weeks ... the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances....

Similar wage basis statutes are found in California, Cal.Lab.Code § 4453 (West 1971); Colorado, Colo.Rev.Stat. § 8–47–101 (1973); District of Columbia, D.C.Code Ann. §§ 36–301 to 344 (1981) (incorporating the substantive provisions of the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 910 (1976)); Florida, Fla.Stat. § 440.14 (West.1981); Georgia, Ga.Code Ann. § 114–402 (1973); Maine, Me.Rev.Stat.Ann. tit. 39, § 51 (1978); Michigan, Mich.Comp.Laws Ann. § 418.371 (1967); and New York, N.Y. Workmen's Compensation Law § 14 (McKinney 1965).

The Alaska statute differed from these statutes principally in the number of weeks worked requirement and in the language authorizing discretionary computation in lieu of mechanical calculation. Under the federal statute and numerous state statutes, discretionary computation is authorized where the statutory methods cannot be fairly *applied* to arrive at an annual earnings approximation. Under the pre-amendment Alaska statute, however, discretionary computation was proper where a claimant's *wage* could not be fairly *calculated* pursuant to the statutory method. We have had no opportunity to consider whether this difference in phraseology is significant, and, in light of the result reached here, do not reach the question.

**4.** Examples include employment situations where the claimant has been a full time employee irregularly employed due to poor business conditions, *Casualty Indem. Exch. v. Industrial Accident Comm'n,* 135 Cal.App. 746, 27 P.2d 782 (Cal.1933), a temporary full time employee, *Dept. of Water v. Industrial Accident Comm'n,* 130 Cal.App. 231, 19 P.2d 832 (Cal.1933), a seasonal employee, *Marshall v. Andrew F. Mahoney Co.,* 56 F.2d 74 (9th Cir. 1932) and an employee newly engaged in piece-work, *Belliamo v. Marlin-Rockwell Co.,* 215 App.Div. 845, 213 N.Y.S. 85 (N.Y.1927). In each case, the statutory formula could not be fairly applied since to do so would result in ascertaining a "mere theoretical earning capacity, having no regard to the actual facts of the case, but [which] would award arbitrarily ... compensation in excess of what [the employee] was able to earn if at work...." *Marshall v. Andrew F. Mahoney, Co.,* 56 F.2d 74, 78 (9th Cir.1932) (interpreting sections of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 910 (1976)).

Board is then directed to select the year "most favorable" to the employee to serve as the basis for computing the claimant's probable future earning capacity. The 1977 amendment thus shifts emphasis from the employee's earnings at the time of injury to the employee's earnings over a selected historical period.[5] Implicit in this change is the premise that an employee's documented past earning capacity is perhaps the best guide to probable future earning capacity.

■ The state submits that an average weekly wage figure arrived at by selecting the year most favorable to the employee and dividing by fifty-two is "unfairly calculated" if the resulting figure exceeds the employee's salary at the time of injury. In essence, the state contends that the Board has the discretion to modify a figure calculated under subsection (2) whenever it feels that a claimant's future earnings will not equal documented past earnings. We believe that such a construction of AS 23.30.-220(3) would eviscerate AS 23.30.220(2), contravene the legislature's intent in amending the statute, and create unnecessary difficulties in administering the wage basis provision of the Alaska Workers' Compensation Act.

The state concedes, as it must, that some excess of award over salary is contemplated by new subsection (2). It follows that a claimant's salary on the date of injury *cannot* serve as a ceiling on compensation awards; any other rule would simply reinstate the claimant's salary at the time of injury as the determinative factor in calculating future earning capacity. Consequently, Dupree's average weekly wage figure cannot be said to be unfairly calculated, as that term is used in subsection (3), merely because it exceeds her salary on the date of injury. In arguing to the contrary, the state is in effect trying to undo what the legislature did in 1977.

■ Nor are we persuaded that Dupree's award was unfairly calculated because there was no evidence that she was capable of reproducing her 1976 earnings. We recognize that Dupree's earnings in 1976 were a product of the times and unlikely, in the normal course of things, to be repeated. But neither this court nor the Board can say with any assurance that Dupree would not have earned as much during the period of disability as she did in 1976. In arguing to the contrary, the state is in essence suggesting that the Board is entitled to make factual findings in every case on the likelihood that a claimant's future earnings will not equal documented past earnings. This the statute does not authorize. On the contrary, subsection (2) is written to give the benefit of past earnings history to the employee. It would be inconsistent with this purpose to place the burden on the employee of proving that past earnings were representative of future

5. A review of the pertinent legislative history indicates that this was a reasoned and intentional departure from the traditional manner of computation. The bill that made the changes to AS 23.30.220 was introduced at the request of the governor as S.B. 131 on February 4, 1977. 1977 Senate Journal 203. As initially proposed, the bill would have increased the weeks worked requirement in subsections (1) and (2) from 27 to 52. *Id.* When referred to the Senate Labor and Management Committee, however, the original proposal was rejected and the following substituted:

Section 8. AS 23.30.220(2) is amended to read:

(2) [IF AT THE TIME OF THE INJURY THE EMPLOYEE HAS BEEN EMPLOYED IN THE SAME OR SIMILAR EMPLOYMENT FOR LESS THAN 27 WEEKS IMMEDIATELY BEFORE THE INJURY,] the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

Sec. 9. AS 23.30.172 and 23.30.220(1) are repealed.

The bill left the senate in this form.

The bill moved through the house without major amendment. Proposed amendment No. 7, however, would have left AS 23.30.220 as it existed before 1977. This amendment was rejected and the bill became law. 1977 House Journal 1474.

This history, sparse as it may be, indicates that the legislature deliberately shifted to a historical earnings approach, disregarding earnings at the time of injury or even in the year of injury. All that is material are the highest earnings in the three calendar years immediately preceding injury.

earning capacity; the legislature has already made that determination. We are unwilling to rewrite subsection (2) to permit the Board to substitute its discretion for the legislative past earnings approach.[6] Accordingly, we conclude that subsection (2) does not entitle the Board to disregard an employee's documented past earnings merely because it feels the claimant is unlikely to match those earnings in the years to come.[7]

We note that any other construction of subsection (3) could only serve to increase uncertainty concerning proper wage basis calculation and cause a corresponding increase in litigation. Adopting the state's construction of subsection (3) would put the Board in the uncomfortable position of having to assess whether an award in excess of salary is warranted, or whether past earnings are, for some reason, unrepresentative of future earning capacity. Such speculation is not contemplated by the statute.

Finally, we note that the result reached here is compelled by the rule that ambiguous workers' compensation statutes should be construed in favor of the employee. *Seward Marine Services, Inc. v. Anderson,* 643 P.2d 493 (Alaska 1982); *Hood v. State, Workmen's Compensation Board,* 574 P.2d 811, 813 (Alaska 1978). Given this longstanding rule of construction, and considering the evident legislative design, we hold that Dupree's average weekly wage was not unfairly calculated merely because it exceeded her salary on the date of injury.[8]

AFFIRMED.

MATTHEWS, Justice, joined by RABINOWITZ, Justice, dissenting.

Subsection 3 of AS 23.30.220 authorizes the Workers' Compensation Board to calculate average weekly wage in accordance with the usual wage for similar services rendered under similar circumstances if the Board determines that the average weekly

---

**6.** The state submits that it is not attempting to confer additional discretion on the Board but merely seeks to confirm existing discretion. It argues that subsection (3) was designed to permit modifications where the statutory formulae were less likely to produce an accurate earnings estimate than the appraisal possible though an ad hoc administrative proceding. Contrary to this assertion, however, it is not at all clear that subsection (3) was intended to confer such wide-ranging discretion.

Review of the legislative history of the federal analogue to subsection (3) indicates that that section was designed to permit discretionary computation *only* when the claimant was involved in seasonal, intermittant, or part time employment:

> This subsection in the present law is used where the employment itself, in which the injured employee was engaged when injured, *does not afford a full year of work* .... Thus subsection (c) applies to seasonal, intermittent, discontinuous, and like employment which affords less than a full work year or work week.

S.Rep. No. 1315, 80th Cong., 2d Sess., *reprinted in* 1948 U.S.Code Cong.Serv. 1979, 1982 (emphasis added). At least one jurisdiction, however, has authorized discretionary computation in an instance where reference to the formula, while possible, would produce a less accurate figure than that possible through administrative adjudication. *Hastings v. Earth Satellite Corp.,* 628 F.2d 85 (D.C.Cir.1980). Conversely,

other courts have held that the statutory formulae must be applied whenever possible, i.e., where the claimant has been engaged in full time steady work for the requisite period. *Landry v. Bates Fabric, Inc.,* 389 A.2d 311, 312 (Me.1978); *St. Pierre v. St. Regis Paper Co.,* 386 A.2d 714, 716 (Me.1978). Given the narrow question presented here, i.e., whether Dupree's wage was unfairly calculated because it exceeded her salary on the date of injury, we do not believe it necessary to discuss this issue further.

**7.** We recognize that there is authority for treating wage basis calculation somewhat differently in the case of a temporarily (as opposed to permanently) disabled employee. *See Argonaut Ins. Co. v. Industrial Accident Comm'n,* 57 Cal.2d 589, 371 P.2d 281 (Cal.1962). AS 23.30.220 does not draw such a distinction and we decline to create one judicially. The Board's discretion should not vary according to the severity of the injury and the duration of the incapacity.

**8.** This opinion does not purport to address all instances where an award might be subject to modification. Rather, our holding is simply that the Board lacks authority to modify an award based on documented past earnings, absent facts in the record establishing a claimant's absolute inability to match past earnings in the years to come.

wage at the time of injury "cannot be fairly calculated under" the mathematical formula of subsection 2. By what test is the concept of fairness expressed in subsection 3 to be measured? The objective in calculating average weekly wage is to produce an honest approximation of the claimant's probable future earning capacity during the period in which compensation is to be paid. Thus, if the mathematical formula of subsection 2 does yield an honest approximation of probable future earnings it can be considered fair; if it does not it cannot be considered fair. As Larson puts it:

> The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of the impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.

2 A. Larson, The Law of Workmen's Compensation § 60.11(d), at 10–564 (1981).

In the present case the Board has made a factual finding that the average weekly wage for Ms. Dupree at the time she was injured cannot be fairly calculated under subsection 2. This factual finding is certainly supported by substantial evidence given the major discrepancy between Dupree's earnings in her steady full-time job at the time of injury, in contrast to her earnings in her short term job associated with the construction of the Trans-Alaska Pipeline. During 1976 when she worked on the pipeline she made, on the average,

$538.00 per week. When she was injured in 1978 while working for the state her gross wages were approximately $300.00 per week. Dupree testified that she had worked for the state as a secretary for nine years before working on the pipeline, that she returned to the state payroll after pipeline construction had terminated, and that when she was injured her intent was to continue to work for the state indefinitely.[1] There was no contrary evidence. The Board in making the factual finding of unfairness has done exactly what subsection 3 of the statute has directed it to do. Since the finding is supported by substantial evidence we cannot properly interfere with it. Thus, the decision of the Board must be affirmed.

Today's majority opinion, however, if I read it correctly, does not take issue with the factual determination that Dupree's average weekly wage at the time she was injured could not fairly be calculated under the mathematical formula supplied by subsection 2. Instead, the opinion holds that "fairly" as that term is used in subsection 3 cannot be taken literally. Instead, its meaning must be restricted to cases where there is a record "establishing a claimant's absolute inability to match past earnings...." (At 566, n. 8) I am not sure that I know what this language means.

Philosophically one may doubt that an absolute inability can ever exist, for there is a remote possibility of nearly anything. More reasonably, perhaps the majority merely intends to say that the concept of unfairness as expressed in subsection 3 means obvious or clear unfairness. While I would not join in this construction of the statute, because it is not what the statute says, it is true that the triggering finding of unfairness under subsection 3 cannot be made merely because there is a slight variance between wages at the time of injury and the average weekly wage arrived at under the formula of subsection 2.[2] A

---

1. In *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d 264, 266 (Alaska 1974), we noted that the claimant's intentions as to em-

ployment in the future were relevant to a determination of future earning capacity.

2. As Larson puts it:

slight variance does not result in unfairness. A significant variance results in unfairness. Perhaps the majority would say that a large variance produces an obvious unfairness.

I believe that the Legislature has authorized the Board to abandon the formula of subsection 2 where there is a significant difference between the average weekly wage so calculated and the actual wage. The majority, again if I read the opinion correctly, believes that the Board can act when the variance is more than significant, either large, or very large. If that is what the majority means, however, the question that it should take up is whether a sufficiently large variance exists in this case. The difference between the average weekly wage calculated under subsection 2, $538.00, and the actual weekly wage, $300.00, is $238.00, a sum that is more than two-thirds of the actual wage. To me, this difference seems both significant and large enough to result in obvious unfairness. The majority opinion should at least explain why this is not so.

Finally, the majority opinion suggests that reading subsection 3 literally will increase uncertainty and therefore litigation. It is true that if subsection 3 were not in the statute there would be a higher measure of certainty in calculating average weekly wage. However, unfortunately for the cause of certainty but, as the Legislature must have thought, fortunately for the cause of fairness, subsection 3 does exist and it is our task to apply it sensibly. "It is always harder work to apply tests of reasonableness than to apply self-executing mathematical tests. But the former cannot be avoided in a mature and civilized legal system." 2 A. Larson, *supra,* at 10–557.

The mere fact that the application of the first test, based on claimant's own earnings record, may produce an annual wage slightly less than the actual wage is not reason enough for abandoning it as unreasonable. 2 A. Larson, *supra,* at 10–555.