Robert E. JOHNSON, Appellant,

v.

RCA–OMS, INC., and Zurich-American
Insurance Company, Alaska Workers'
Compensation Board, Appellees.

No. 7327.

Supreme Court of Alaska.

May 11, 1984.

Robert C. Blackford, Fairbanks, for appellant.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and CARLSON, Judge [*].

OPINION

MATTHEWS, Justice.

The question in this case is whether the Alaska Workers' Compensation Board properly utilized subsection (2) of AS 23.-30.220 rather than subsection (3) of that statute in computing Robert Johnson's average weekly wage for the purpose of establishing his temporary total disability benefits.[1] AS 23.30.220(2) and (3), as in effect at the time of Johnson's injury, provided: [2]

Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is based for computing compensation, and is determined as follows:

(2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board; ...

In November of 1979 Robert Johnson retired from the United States Air Force after 20 years of service. On March 13, 1980 he began working for RCA–OMS, Inc. He was injured on the job on June 12, 1980, but was able to return to work after a week of treatment. He continued to work until February 13, 1981 at which time he was hospitalized and spinal surgery was performed for a condition attributable to the June 12, 1980 injury.

Johnson's salary for the final year of his military service, 1979, was $20,166.12. He asserted that his salary for the approximately 40 weeks that he worked for RCA–OMS was some $42,000.00, most of it earned after his injury. The Board, using subsection (2) of AS 23.30.220, determined Johnson's average weekly wage according to his military rather than civilian salary. So computed, his average weekly wage was $387.81, resulting in benefits of $258.54 per week. By contrast, if subsection (3) had been used, his average weekly wage would apparently have been approximately $1,000.00 with benefits two-thirds of that.

Johnson appealed the Board's determination to the superior court which affirmed

---

[*] Carlson, Superior Court Judge, sitting by assignment made pursuant to Article IV, section 16, of the Constitution of Alaska.

1. Under AS 23.30.185 a person entitled to receive temporary total disability benefits shall receive ⅔ of his average weekly wage during the continuance of the disability.

2. AS 23.30.220(a)(1) and (2) were substantially amended effective January 1, 1984. The amended sections, which have no effect on this case read:

(a) The spendable weekly wage of an injured employee at the time of an injury is the basis for computing compensation. It is the

employee's gross weekly earnings minus payroll tax deductions. The gross weekly earnings shall be calculated as follows:

(1) The gross weekly earnings are computed by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury.

(2) If the board determines that the gross weekly earnings at the time of the injury cannot be fairly calculated under (1) of this subsection, the board may determine the employee's gross weekly earnings for calculating compensation by considering the nature of the employee's work and work history.

the Board's ruling. Johnson now appeals to this court. We reverse.

■ The objective of AS 23.30.220 is to formulate a fair approximation of a claimant's probable future earning capacity during the period in which compensation benefits are to be paid. Normally the formula in subsection (2) will yield a fair approximation of this figure. However, sometimes it will not, and in those cases subsection (3) of the statute is to be used.

> The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of the impact of probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.

2 A. Larson, The Law of Workmen's Compensation § 60.11(d), at 10–564 (1983) (footnote omitted).

Other provisions of our Alaska Workers' Compensation statutes demonstrate that the objective of average weekly wage calculation is to arrive at a fair approximation of probable future earning capacity. Thus AS 23.30.220(4) provides:

> (4) if an employee is a minor or an apprentice, or a trainee, as determined by the board, when injured, and under normal conditions his wages would increase during the period of disability, this fact shall be considered in computing his average weekly wage; ...

AS 23.30.210, dealing with partial disability provides in part:

> [T]he wage-earning capacity of an injured employee is determined by his actual earnings if the actual earnings fairly and reasonably represent his *wage-earn-ing capacity*. If the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his *wage-earning capacity*, the board may, in the interest of justice, fix the wage-earning capacity which is reasonable....

(Emphasis added).

■ If there is only a slight variance between wages at the time of injury and the average weekly wage arrived at under the formula of subsection (2) it would not be unfair to utilize the formula prescribed by subsection (2). In the present case, however, the apparent disparity between Johnson's military salary and what he actually earned at the time of his disability is so substantial that application of the subsection (2) formula clearly does not fairly reflect his wage-earning capacity. The Board should, therefore, have calculated Johnson's average weekly wage under subsection (3).

In reaching this conclusion we are aware that a broad reading of our recent case of *State v. Dupree*, 664 P.2d 562 (Alaska 1983) would support the Board's decision made in this case. *Dupree* presented essentially the converse facts of those in the present case. Dupree's average weekly wage computed pursuant to AS 23.30.-220(2) exceeded her anticipated earnings as computed under subsection (3). Despite the fact that Dupree was not likely to return to work at her earlier higher wages, the majority opinion held that the formula in subsection (2) should be applied. *Id.* at 565. Without reconsidering the correctness of the result in *Dupree*, the present case is clearly distinguishable.

■ The holding in *Dupree* was based on three reasons: (1) the administrative convenience of applying subsection (2), as opposed to subsection (3); (2) the perceived purpose of subsection (2) which was "to give the benefit of past earnings history to the employee," *id.* at 565; and (3) the "rule that ambiguous worker's compensation statutes should be construed in favor of the employee." *Id.* at 566. The second and third reasons are not present here, for

application of subsection (2) does not benefit Johnson and any ambiguity in the statute is not resolved in Johnson's favor when subsection (2) is employed. The first reason, administrative convenience, is a factor in the present case, but we regard it as insufficient to explain the result in *Dupree* or to require application of subsection (2) in this case. The structure of section 220 requires that the Board address and determine the fairness and undue hardship questions posed by subsection (3) in every case in which the points are raised. Although these questions do not have answers which can be arrived at with mathematical precision, the legislature, by enacting subsection (3), has recognized that the goal of certainty must give way to that of fairness whenever the two conflict.

▪▪▪ The Board also determined that its decision to apply subsection (2) would not cause undue hardship to Johnson because he would receive his military pension in addition to any compensation award. Since the unfair calculation and undue hardship clauses of subsection (3) are disjunctive, our conclusion that Johnson's wage at the time of injury could not be fairly calculated under subsection (2) is dispositive. We note, however, that in our view consideration of Johnson's pension was improper, since worker's compensation benefits are meant to compensate for wages lost regardless of the other assets of the injured worker.

We also note that our decision that subsection (3) should have been utilized makes it unnecessary to decide whether the phrase "time of injury" as used in AS 23.30.220 means, in effect, time of disability due to injury. There is authority on both sides of this question. *See* 2 A. Larson, The Law of Workmen's Compensation § 60.11(a), at 10–543, –544 n. 77.2 (1982). REVERSED and REMANDED.

1. 2 A. Larson, The Law of Workmen's Compensation § 60.11(d), at 10–564 (1983).

2. I think the conclusion inescapable that *Dupree* is being overruled by the court, despite its protestation to the contrary.

COMPTON, Justice, dissenting.

As noted by the court, it is the "rule that ambiguous workers' compensation statutes should be construed in favor of the employee." *State v. Dupree*, 664 P.2d 562, 566 (Alaska 1983). I do not disagree with this rule of construction. Despite the court's assertion that the rule is not being employed in this case, 681 P.2d at 907 (Alaska 1984), I believe that the contrary is true. Since I also believe the statutory language to be unambiguous on the point in issue, I dissent.

The court quotes Professor Larson's admonition that we not suppose that "compensation theory" is satisfied by use of a mechanical representation of a claimant's own earnings in some arbitrary past period as a wage basis.[1] It is this same quote that provides the launching pad for the dissent in *Dupree*.[2] I suggest that while this admonition is of interest to courts, it would be better addressed to legislatures which mandate the use of mechanical formulae in determining wage basis. In this case we are not applying compensation theory; we are applying an existing statute to particular facts.

The Alaska legislature has made a conscious decision to use the past to determine present and future benefits. The average weekly wage to be used in computing temporary total disability benefits is not the claimant's actual weekly wage at the time of injury. Rather, it is an artificial figure arrived at by the use of a mechanical formula applied to figures derived from reference to an arbitrary past period,[3] a procedure apparently only conditionally acceptable to Professor Larson.

The court seeks refuge from the perceived ravages of applying a mechanical formula in exceptions contained in AS 23.-

3. AS 23.30.220(4) does provide that future normal wage increases for minors, apprentices, or trainees should be taken into account in computing the average weekly wage. It makes no such exception for military personnel entering the private sector.

30.220(3).[4]  It invents the following dichotomy:

> If there is only a *slight variance* between wages at the time of injury and the average weekly wage arrived at under the formula of subsection (2) it would not be unfair to utilize the formula prescribed by subsection (2).  In the present case, however, the apparent *disparity* between Johnson's military salary and what he actually earned at the time of his disability *is so substantial* that application of the subsection (2) formula clearly does not fairly reflect his wage-earning capacity.  The Board should, therefore, have calculated Johnson's average weekly wage under subsection (3).  (Emphasis added).

681 P.2d at 907 (Alaska 1984).  I say "invent" because I can find nothing in the statute remotely suggesting the slight variance/substantial disparity test now to be applied in determining whether subsection (3) is to be utilized.  Furthermore, there would have been no reason for the Alaska legislature to adopt a formula based on an arbitrary past period if it intended that reference to such period be utilized when the resulting artificial figure varies only *slightly* from actual wages at the time of injury.

The court strays, it seems to me, when it fails to keep separate the distinction between total and partial disability benefits.[5]  Indeed, the court's confusion is readily apparent from its reference to Johnson's "wage-earning capacity,"[6] a term of art

---

**4.**  AS 23.30.220(3) provides:
[I]f the board determines that the wage at the time of injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage ... shall be the usual wage for similar service ....

**5.**  The pertinent statutes provide:
AS 23.30.180.  PERMANENT TOTAL DISABILITY.  In case of total disability adjudged to be permanent 66⅔ per cent of the injured employee's *average weekly wages* shall be paid to the employee during the continuance of the total disability.  Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two of them, in the absence of conclusive proof to the contrary, constitutes permanent total disability.  In all other cases permanent total disability is determined in accordance with the facts.  (Emphasis added).
AS 23.30.185.  COMPENSATION FOR TEMPORARY TOTAL DISABILITY.  In case of disability total in character but temporary in quality, 66⅔ per cent of the injured employee's *average weekly wages* shall be paid to the employee during the continuance of the disability.  (Emphasis added).
AS 23.30.190.  COMPENSATION FOR PERMANENT PARTIAL DISABILITY.  (a) In case of disability partial in character but permanent in quality the compensation is 66⅔ per cent of the injured employee's *average weekly wages* in addition to compensation for temporary total disability or temporary partial disability paid in accordance with AS 23.30.185 or 23.30.200, respectively, and shall be paid to the employee as follows:

 ....
(20) in all other cases in this class of disability the compensation is 66⅔ percent of the difference between his *average weekly*

*wages* and his *wage-earning capacity* after the injury in the same employment or otherwise, payable during the continuance of the partial disability, but subject to reconsideration of the degree of the impairment by the board on its own motion or upon application of a party in interest;  whenever the board determines that it is in the interest of justice, the liability of the employer for compensation, or any part of it as determined by the board, may be discharged by the payment of a lump sum;  (Emphasis added).
AS 23.30.200.  TEMPORARY PARTIAL DISABILITY.  In case of temporary partial disability resulting in decrease of earning capacity the compensation shall be 66⅔ per cent of the difference between the injured employee's *average weekly wages* before the injury and his *wage earning capacity* after the injury in the same or another employment, to be paid during the continuance of the disability, but not to be paid for more than five years.  (Emphasis added).

**6.**  The pertinent statute provides:
AS 23.30.210.  DETERMINATION OF WAGE-EARNING CAPACITY.  In a case of partial disability under AS 23.30.190(20) or 23.30.200 the wage-earning capacity of an injured employee is determined by his actual earnings if the actual earnings fairly and reasonably represent his wage-earning capacity.  If the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the board may, in the interest of justice, fix the wage-earning capacity which is reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his ca-

that is not synonymous with average weekly wages. Wage earning capacity is irrelevant to determination of average weekly wages and temporary total disability benefits.[7] Simply, the court is using average weekly wages and wage earning capacity interchangeably, even though they are separately defined.

Application of a mechanical formula has more than administrative convenience to recommend it. The point in time when the claimant is most likely to need an expeditious determination of benefits is during the period of temporary total disability. Presumably the claimant is then without income. The court now injects a slight variance/substantial disparity test into the equation, along with notions of fairness in general. I submit this will cause delay and in fact be counterproductive of expeditious determination of temporary total disability benefits.

*If* the exceptions had stated, as they easily could have, that the average weekly wage could be disregarded if it was not fairly and reasonably representative of actual wages, I would agree with the court. However, they did not. Johnson's wage can be "fairly calculated." He has shown no "undue hardship." I would affirm.

pacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.

7. Indeed, Professor Larson even acknowledges that it may be proper to treat temporary disability benefits as an exception to a rule regarding projection of future earnings loss for permanent disability extending into the indefinite future. 2 A. Larson, The Law of Workmen's Compensation § 60.22(b) (1983).