Richard L. PHILLIPS, Appellant,

v.

HOUSTON CONTRACTING, INC. (Employer) and Aetna Casualty & Surety Company (Insurer), Appellees.

No. S–1358.

Supreme Court of Alaska.

Feb. 13, 1987.

Michael J. Schneider, Mestas & Schneider, Anchorage, for appellant.

James R. Slaybaugh, Pletcher & Slaybaugh, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

Richard L. Phillips appeals from a judgment of the superior court affirming an

Alaska Workers' Compensation Board (the "Board") order denying his claim for a compensation rate adjustment. The sole issue on appeal is the correct computation of an injured worker's compensation rate under AS 23.30.220 as it read in 1976. We reverse and remand for further consideration by the Board.

## I. FACTS AND PROCEEDINGS

### A. *Phillips' work history*

During 1975 and 1976, Phillips worked as a heavy duty mechanic for a number of employers associated with the trans-Alaska pipeline. The work generally involved shifts of ten hours per day, seven days per week for nine weeks, followed by two weeks off. Phillips would typically quit a job before completing the nine-week shift, take a vacation, and then begin a new mechanic's job with another employer.

In 1975, Phillips worked for five employers, earning a total of $29,092.39. In 1976, Phillips worked for nine employers, including appellee Houston Contracting, Inc. He worked for Houston from July 8 until August 13, when he was injured. Phillips' total earnings in 1976 from January until August 13 were $19,883.68, a weekly average of $621.37. Of this, Phillips earned $6,892.41 from Houston. His average weekly earnings while working for Houston were $1,303.97.

Although he took "breaks" between jobs, Phillips worked an average of over 40 hours per week during the 27 weeks preceding August 13. His hourly wages had steadily increased during 1975 and 1976 and were at their highest while he was working for Houston. Phillips' wages at Houston were the same as those earned by other heavy-duty mechanics with similar experience on the North Slope.

On August 13, 1976, while in Houston's employ, Phillips was injured. Houston began paying Phillips workers' compensation benefits effective the next day,[1] and has paid benefits continuously since 1976.[2]

### B. *Computation of Phillips' benefits*

An injured worker's compensation rate is based on his "average weekly wage." AS 23.30.220, as it read in 1976, spelled out three alternative means of determining a worker's average weekly wage:

*Determination of average weekly wage.* Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis for computing compensation, and is determined as follows:

(1) if at the time of the injury the employee has been employed in the same or similar employment for 27 weeks immediately before the injury, the average weekly wage is the weekly wage at the time of the injury;

(2) if at the time of the injury the employee has been employed in the same or similar employment for less than 27 weeks immediately before the injury, the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar services rendered by paid employees under similar circumstances, as determined by the board;[3] . . .

---

1. Houston was insured by co-appellee Aetna Casualty and Surety Company. In the interest of simplicity, we assume that Houston compensated Phillips directly.

2. Although Phillips' disability was initially characterized as temporary total disability, it was later recharacterized as permanent partial disability, entitling Phillips to continuing compensation.

3. Ch. 41, § 1, SLA 1968. (Subsections (4) and (5) omitted.) AS 23.30.220 was amended in 1977 and 1979 and was rewritten in 1983. Ch. 75, § 10, 11, SLA 1977; ch. 77, § 2, SLA 1979; ch. 70, § 12, SLA 1983. This opinion will cite to the 1976 version of the statute.

Houston computed Phillips' compensation rate under AS 23.30.220(2), using Phillips' 1975 earnings as the base year. Houston determined that Phillips' compensation rate was $372.98 (his 1975 average weekly wage multiplied by 66–⅔%, as then required by AS 23.30.185 for temporary total disabilities).[4] Because Phillips had not worked continuously for the 27 weeks prior to his injury, Houston assumed that AS 23.30.220(1) did not apply.

Eight years later, on July 25, 1984, Phillips applied to the Board for an adjustment in his compensation rate. Phillips argued that his compensation rate should have been computed under AS 23.30.220(1) or (3) and based on his weekly wages at the time of his injury.

Following a hearing, the Board denied and dismissed Phillips' claim on the grounds that the original computation was "reasonable" and Phillips' claim was barred by the doctrine of laches. The superior court affirmed on the merits only.[5] This appeal followed.

## II. DISCUSSION

AS 23.30.220(1) as it read in 1976 provided that if the worker had been employed in "the same or similar employment for 27 weeks immediately before the injury, the average weekly wage is the weekly wage at the time of the injury." Phillips argues that he was "employed" for the 27 weeks preceding his injury because he worked an average of more than 40 hours per week during that period. Houston counters that Phillips was not "employed" for the 27 weeks because he was unemployed numerous times.

■ The question on appeal is one of statutory construction, and does not involve the Board's special expertise. This court is free to substitute its independent judgment for the Board's and interpret the 27–week rule in accordance with its own view of the purposes of the statute. *Alaska Transp. Comm'n v. Airpac, Inc.*, 685 P.2d 1248, 1251–52 (Alaska 1984).

The fundamental purpose of all workers' compensation schemes is to compensate injured workers for the future earnings they lose as a result of their disabilities. 2A Larson, Workmen's Compensation Law § 60.11(d), 10–564 (1986). Like most states, Alaska measures workers' compensation benefits by a percentage of the injured worker's "average weekly wage." *Id.*, § 60.00 at 10–538. In defining average weekly wage, AS 23.30.220 seeks "to formulate a fair approximation of a claimant's probable future earning capacity during the period in which compensation benefits are to be paid." *Johnson v. RCA–OMS, Inc.*, 681 P.2d 905, 907 (Alaska 1984).

At the time relevant to this appeal, AS 23.30.220 mandated calculating average weekly wage on the basis of current earnings.[6] Subsection (1) provided that if a worker had been employed in the same or similar employment for the 27 weeks immediately preceding the injury, his compensation was to be based on his wages at the time of the injury. This approach was typical: most workers' compensation statutes provided that the average weekly wage

---

**4.** Houston actually compensated Phillips at the rate of $357.59 per week, which was the statutory maximum compensation rate in 1976.

**5.** The superior court held that Phillips' claim was not barred by laches because Houston and Aetna had not met their burden of proving that they were prejudiced by Phillips' having waited eight years to bring his claim. Houston and Aetna have not cross-appealed on this point.

**6.** During the past decade, the statute's emphasis has shifted from present earnings to past earnings as the determinant of earning capacity. In 1977, the legislature repealed AS 23.30.220(1). Under the 1977 amendments, average weekly

wage was generally based on earnings during one of the three calendar years preceding the injury, without regard to earnings at the time of the injury. Ch. 75, § 11, SLA 1977. In 1983, the legislature rewrote the section so that the compensation rate was based on average earnings during the preceding two calendar years. Ch. 70, § 12, SLA 1983. The legislative history suggests that this shift in emphasis was "reasoned and intentional." *State, Dept. of Natural Resources v. Dupree,* 664 P.2d 562, 565 n. 5 (Alaska 1983), overruled on other grounds, *Brunke v. Rogers & Babler,* 714 P.2d 795, 800 n. 7 (Alaska 1986).

was to be determined by the worker's current earnings if he had worked in the same kind of employment for "substantially the whole" of some designated period preceding the injury. Larson, *supra* at § 60.11(b) 10–548–49.

■ The purpose of Alaska's 27–week rule, and of similar provisions in other states, was to provide a rule of thumb for determining when current wages were likely to be reliable predictors of future wages. Applying the subsection in a rigid way to avoid basing compensation on current wages even when they appear to be valid predictors of future wages would be unfaithful to the statutory purpose. *Id.*

■ AS 23.30.220(1) does not specify whether being "employed" for 27 weeks means being continuously employed. But the language "same or similar employment" suggests that the legislature intended to permit some change of employment during the 27–week period. If the legislature had intended subsection (1) to apply only to workers who had not changed jobs during the 27 weeks, it could easily have required "same" rather than "same or similar" employment. Few workers change jobs without at least a short intervening phase of unemployment. Therefore, we conclude that AS 23.30.220(1) must be read to permit some unemployment during the 27–week period. This reading corresponds to the flexible interpretation given similar statutes in other states. Larson, *supra* § 60.11(b), at 10–549.

How much unemployment does AS 23.-30.220(1) tolerate within the 27–week period? We believe the answer is dictated by the purpose of the statute. Unemployment is tolerated so long as it does not render present earnings an unreliable indicator of future earnings.

■ Whether recent unemployment renders current wages unreliable as an indicator of future wages is a question of fact, committed to the discretion of the Board.[7]

Certainly, if a worker has been unemployed for only a few days between similar jobs, that unemployment will not undermine the predictive power of his current wages. On the other hand, if a worker has a history of sporadic employment, his wages at the time of injury may be a poor predictor of his wages in the future.

The Board evidently did not consider whether Phillips' regular pattern of discontinuous employment rendered his wages at the time of his injury an unreliable predictor of his future earnings. In its Decision and Order, the Board stated simply that "[c]onsidering the evidence presented at the October 10, 1984 hearing, we believe there is evidence to support a conclusion that computing employee's average weekly wages based on either 1975 or 1976 wages is a reasonable computation."

■ When a determination is within the realm of agency discretion, the reviewing court's task is to ensure that the agency engages in reasoned decision-making, taking into consideration all material facts and issues. *Southeast Alaska Conservation Council v. State,* 665 P.2d 544, 548–49 (Alaska 1983). When the agency's written decision does not contain a reasoned explanation for its actions, the superior court should remand the decision to the agency for supplementation. *Id.* at 549. We therefore remand this case to the superior court with instructions to remand to the Board for a finding of fact as to whether Phillips' earnings at the time of his injury reliably forecasted his future earnings. If the Board finds in the affirmative, it should compute Phillips' benefits under AS 23.30.-220(1). If the Board finds in the negative, it should consider whether computation of Phillips' benefit under subsection (2) is unfair, and if so, recompute Phillips' benefits under subsection (3).

If the Board computes Phillips' average weekly wage under subsection (1), its computation will be based on Phillips' weekly wage at the time of his injury. The evi-

7. We decline to adopt Phillips' proposed rule of law that if a person has worked an average of at least 40 hours per week during the 27 weeks prior to injury, then that person is presumed to have been "employed" during that period.

dence indicates that when Phillips worked, he worked unusually long hours. He also took an unusually large number of vacations. We note that the Board's computation under subsection (1) must fairly account for Phillips' irregular work schedule.

REVERSED AND REMANDED.