Jack PECK, Appellant,

v.

ALASKA AERONAUTICAL, INC., Employer, Certain Underwriters at Lloyd's of London and the Alaska Worker's Compensation Board, Appellees.

No. S–1726.

Supreme Court of Alaska.

Oct. 30, 1987.

William J. Soule, Clark, Walther & Flanigan, Anchorage, for appellant.

Louise R. Driscoll, Dale W. House, Lane, Powell & Barker, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

Jack Peck (Peck) appeals from a decision of the superior court affirming the decision and order of the Alaska Workers' Compensation Board (Board). The Board held that Peck should be compensated at the average weekly wage which he earned at the time of his injury in 1964, instead of the significantly greater average weekly wage which he was earning at the time of his permanent total disability in 1982. The principal question in this appeal is whether the Board properly utilized AS 23.30.175(b) rather than AS 23.30.220(3) in computing Peck's average weekly wage for the purpose of establishing his permanent total disability benefits. Also presented are issues of whether an increased award of benefits would unconstitutionally impair the Insurers' contract, and whether the Board abused its discretion in awarding Peck's attorney's fees. We reverse.

I. FACTS AND PROCEEDINGS

Peck, an airline pilot, injured his back in early 1964 in an airplane crash which occurred while he was working for Alaska Aeronautical, Inc.'s predecessor. Peck's

average weekly wage at the time of his injury was $255. He was temporarily disabled and returned to work in April 1964. He continued to work as an airline pilot with various airlines until he was forced to retire for medical reasons in May 1982. His pilot's medical certificate was withdrawn at that time because of the medication he was taking for continuing back pain. In May 1982 Peck was employed as an airline pilot for Western Airlines, earning a weekly wage of about $1,294. His highest earnings during the previous three years were $66,656 for 1981.

Peck filed an Application for Adjustment of Claim seeking permanent total disability benefits. This claim was forwarded to agents for Lloyds and Alaska Aeronautical, Inc. (collectively referred to hereinafter as "the Insurers"), who filed a notice to controvert the claim. After investigation and depositions, the Insurers conceded that Peck was permanently and totally disabled as of May 1982, that his disability was directly related to the 1964 air crash, and that they were liable for his disability benefits and medical expenses after May 1982.

The Board held that Peck's disability benefits must be computed based upon his average weekly wage at the time of his injury in 1964, and not upon his significantly higher weekly wages at the time of his total disability in 1982. The Board then utilized AS 23.30.175(b) and AS 23.30.180 as in effect in 1964 to calculate Peck's permanent total disability benefits. Section 180 provided that in cases of permanent total disability, the compensation rate would be 65% of the injured employee's average weekly wage. Section 175(b) provided, however, that "[i]n computing compensation for permanent total disability, the average weekly wages are considered to have been not more than $81." Thus, even though Peck's 1964 average weekly wage was $255, the Board awarded Peck weekly disability benefits of 65% of $81, or $52.65, due from May 1982.

Peck appealed the Board's decision and order to the superior court, which affirmed

the Board's decision. Peck now appeals the superior court's decision to this court.[1]

## II. DISCUSSION

Peck argues that the Board erred in calculating his permanent total disability benefits under the 1964 statutes, and seeks a ruling that the law in effect at the time of the employee's disability, instead of that in effect at the time of the injury, should be applied to determine an employee's benefits under the Alaska Worker's Compensation Act. He further argues that such a ruling would not amount to a constitutionally impermissible retroactive increase in benefits. Finally, he contends that even if the Board correctly utilized the 1964 statutes, it should have increased his benefits to reflect his 1982 salary and the inflated cost of living in 1982.

In reviewing a decision of the Alaska Worker's Compensation Board, this court will independently consider questions of statutory interpretation such as are presented in this appeal. *Hood v. State, Workmen's Compensation Board,* 574 P.2d 811, 813 (Alaska 1978).

The precise question whether "time of injury" means in effect "time of disability due to injury" has not been addressed by this court. *Johnson v. RCA–OMS, Inc.,* 681 P.2d 905, 908 (Alaska 1984); *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 593 n. 5 (Alaska 1979). The Board recognized this, and held that the legislature did not intend that "date of injury" and "date of disability" be used interchangeably. The Board reasoned as follows:

> AS 23.30.175(a) in 1982 provided in part: The weekly rate of compensation for disability ... may not exceed the percentage of the Alaska average weekly wage *in effect on the date of injury* as determined by the table contained in this subsection.

> Similarly, in 1964 and 1982, AS 23.30.-220 which related to determining a person's average weekly wage stated:

**1.** The Board has given notice that it will not actively participate in this appeal because it has determined that there is no independent Board interest being decided.

Except as otherwise provided in this chapter, the average weekly wage of the injured employee *at the time of the injury* is the basis for computing compensation.

Further, "disability" (AS 23.30.265(10)) and "injury" (AS 23.30.265(13)) were defined separately as follows:

"Disability" means incapacity because of injury to earn the wage which the employee was receiving *at the time of injury* in the same or any other employment;

and

"Injury" means accidental injury or death arising out of and in the course of employment....

(Emphasis supplied by the Board). Relying on the statutory language and framework, the Board found that the legislature had determined that the date of injury is not the date of disability, and it calculated Peck's disability benefits based upon his 1964 wages and subject to the statutory limits in effect in 1964.

■ The Board also rejected Peck's argument, which he renews on appeal, that even if the average weekly wage is properly based on 1964 wages, the Board should adjust his compensation rate pursuant to this court's decision in *Johnson v. RCA–OMS*. *Johnson* involved the construction and application of AS 23.30.220(2) and (3) (as in effect in 1982), which provided:

Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis for computing compensation, and is determined as follows:

(1) Repealed by § 11, ch. 75, SLA 1977.

(2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board.

Johnson had retired from the military in 1979, earning an annual salary of $20,166. He worked for about 40 weeks for RCA–OMS in 1980, earning some $40,000. He was insured on the job with RCA–OMS, and sought temporary total disability benefits. The Board applied AS 23.30.220(2) and determined Johnson's average weekly wage based upon his military salary, resulting in benefits of $258 per week. Johnson argued that the Board should have used subsection (3) of AS 23.30.220, thereby determining his benefits based upon his higher civilian salary, which would have resulted in a weekly benefit award of some $666. 681 P.2d at 906.

We agreed with Johnson and held that

[i]f there is only a slight variance between wages at the time of injury and the average weekly wage arrived at under the formula prescribed by subsection (2) it would not be unfair to utilize the formula prescribed by subsection (2). In the present case, however, the apparent disparity between Johnson's military salary and what he actually earned at the time of his disability is so substantial that application of the subsection (2) formula clearly does not fairly reflect his wage-earning capacity. The Board should, therefore, have calculated Johnson's average weekly wage under subsection (3).

*Id.* at 907; *accord State v. Gronroos*, 697 P.2d 1047, 1049 (Alaska 1985); *Deuser v. State*, 697 P.2d 647, 649 (Alaska 1985). Further, we held that "[t]he structure of section 220 requires that the Board address and determine the fairness and undue hardship questions posed by subsection (3) in every case in which the points are raised." *Johnson*, 681 P.2d at 908. We explained that "the legislature, by enacting subsection (3), has recognized that the goal of certainty must give way to that of fairness whenever the two conflict." *Id.* In this case, the disparity between Peck's 1964

average weekly wage of $255 and his 1982 average weekly wage of $1,294 at the time of his disability is even greater than the disparity in *Johnson.*

We recently reaffirmed our holdings in *Johnson, Gronroos* and *Deuser* in *Brunke v. Rogers & Babler,* 714 P.2d 795 (Alaska 1986). There we held that an employee who sustained a back injury three months after he began a new job, and whose salary dramatically increased in that new job, was entitled to have temporary total disability benefits calculated under AS 23.30.220(3) instead of AS 23.30.220(1), where reliance on his prior annual wages under AS 23.30.-220(2) would result in undue hardship. *Id.* at 800.

Our rationale in *Brunke* and *Johnson,* temporary total disability cases, is equally applicable to Peck's permanent total disability case.

> "The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of the impact of probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis."

*Id.* at 907, (quoting 2 A. Larson, *The Law of Workmen's Compensation* § 60.11(d), at 10–564 (1983) (footnote omitted) (hereinafter "Larson")). We have recognized that the difference between permanent and temporary disabilities may be of significance in some contexts, yet conclude that the difference is of no significance in this case. In *Deuser,* we explained:

> "An estimate of earning capacity is a prediction of what an employee's earnings would have been had he not been injured. Earning capacity, for the pur-

poses of a temporary award, however, [as in *Deuser* ] may differ from earning capacity for the purposes of a permanent award. In the former case the prediction of earnings need only be made for the duration of the temporary disability. In the latter the prediction is more complex because the compensation is for loss of earning power over a long span of time. Thus an applicant's earning capacity could be maximum for a temporary award and minimum for a permanent award or the reverse. Evidence sufficient to sustain a maximum temporary award might not sustain a maximum permanent award. In making an award for temporary disability, the [Board] will ordinarily be concerned with whether an applicant would have continued working at a given wage for the duration of the disability. In making a permanent award, long-term earning history is a reliable guide in predicting earning capacity, ..."

697 P.2d at 649–50, (quoting *Argonaut Ins. Co. v. Industrial Accident Comm'n,* 57 Cal.2d 589, 21 Cal.Rptr. 545, 371 P.2d 281, 284 (1962)). The reason the difference is not of significance in this case is because Peck has in fact demonstrated a reliable, long-term earning capacity resulting in a significantly higher actual wage. To deny him the benefit of his earning history simply because his disability is permanent would be to turn the fairness question on its head. As Professor Larson explained, "[h]is disability reaches into the future, ... his loss as a result of injury must be thought of in terms of the impact of probable future earnings, *perhaps for the rest of his life.*" Larson, § 60.11(d), *quoted in Johnson,* 681 P.2d at 907 (emphasis added).

In rejecting Peck's AS 23.30.220 argument, the Board first stated that the version of that provision which this court interpreted in *Johnson, Deuser* and *Gronroos* was "totally different" than that in effect in 1964. We disagree. The version in effect in 1964 provided:

> Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis upon which to compute

compensation and is determined as follows:

[Subsections (1) and (2) provide formulas for calculating average annual earnings based upon 300 times the average daily wage for a six-day per week worker and 260 times the average daily wage for a five-day per week worker.]

(3) If either of these methods set out in (1) and (2) of this section of arriving at the average annual earnings of the injured employee *cannot reasonably and fairly be applied,* the average annual earnings are the sum which, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same neighboring locality, *or other employment of the employee,* including the reasonable value of the services of the employee if engaged in self-employment, *reasonably represents the annual earning capacity of the injured employee.*

AS 23.30.220 (1962) (emphasis added). It seems clear that subsection (3) sets forth the identical concern with fairness in calculating earning capacity that we identified in subsection (3) of the version of AS 23.30.-220 in effect in *Johnson.* If anything, subsection (3) of the 1964 version is even clearer than the 1982 version in expressly stating that the act is principally concerned with awarding an amount which "reasonably represents the annual earning capacity of the injured employee." The fact that the mechanical formulas for calculating average weekly wages in subsections (1) and (2) are different in the 1964 and 1982 versions is a distinction without a difference. We conclude that the Board improperly refused to apply subsection (3) in this case, as requested by Peck and as required by *Johnson.* 681 P.2d at 908. *Cf. Shivers v. Ocean Dock Industries,* Alaska Worker's Comp. Bd. Case No. 408913, at 4 (Nov. 9, 1984) ("Since the provisions for determin-

ing an average weekly wage under § 220 prior to 1984 and determining spendable weekly wage under § 220 after 1984, are comparable the Board feels compelled to follow the Court's reasoning in *Johnson* ").

The Board stated as a second reason for rejecting Peck's AS 23.30.220 argument that "AS 23.30.175(b), as it existed in 1964, provided that in computing [permanent total disability] compensation, the [average weekly wage] could not be considered to be more than $81. No such maximum existed in 1984 when *Johnson* was decided." The Board is mistaken. The version of AS 23.-30.175 in effect when Johnson was disabled provided both maximum and minimum limits on the rate of compensation for both employees with temporary disabilities (such as Johnson) and those with permanent disabilities (such as Peck). Section 175(a) provided that "[c]ompensation for temporary disability [such as Johnson's] or permanent partial disability may not exceed $175 a week." AS 23.30.175(a) (1982). The maximum for permanent total disabilities, such as Peck's, was also $175. AS 23.30.175(b) (1982). Nevertheless, in *Johnson,* the Board awarded Johnson $258.54 per week in temporary total disability benefits; it did not limit his weekly benefits to $175.[2] 681 P.2d at 906.

Under a strict application of AS 23.30.-175(b) (1962), the Board is probably correct in applying the 1964 statutory limit which provides that "the average weekly wages are considered to have been not more than $81," unless this limit must also give way in circumstances where its application would be grossly unfair. In *Wien Air Alaska v. Arant,* 592 P.2d 352, 354 (Alaska 1979), we explained that under Alaska's two-step process for calculating compensation payments, if the result under step one in calculating the injured employee's average weekly wages is greater than step two's specified maximum limitation on the weekly award, then the claimant only receives the specified maximum limited amount.

---

**2.** We cannot perceive any reason why the Board would apply section 175 in one case and not another. Unfortunately, the Board is not partic-

ipating in this appeal, and will not be able to explain its actions.

It is reasonable to construe this provision, however, as viewing section 175(b)'s maximum limitation as a limit that the legislature intended to be applied in the usual situation where an employee is injured and disabled at about the same time. If, as in this case, an employee is injured, but not permanently disabled until some distant future time, the legislature's limit in section 175(b) would no longer be strictly applicable. This interpretation is supported by the legislature's expression of concern in AS 23.30.220(3) with alternative ways to calculate awards that "reasonably represent[ ] the annual earning capacity of the injured employee." Certainly the legislature has recognized over time that the limits imposed in section 175 must be increased to keep up with rising costs of living. The $81 limit has increased to $100 in 1966, to $113 in 1968, to $127 in 1970, and to $175 in 1972. *See* ch. 193, sec. 5(2)(3), SLA 1959; ch. 46, sec. 4, SLA 1964 (maximum compensation for temporary and permanent partial disabilities increased to $100 a week); ch. 113, sec. 1, SLA 1966 (maximum compensation for permanent total disabilities increased to $100 a week); ch. 206, sec. 1, SLA 1968; ch. 228, sec. 1, SLA 1970; ch. 10, sec. 3, SLA 1972, respectively. Finally, in July 1982, the legislature abandoned a flat dollar amount, and instead provided a table requiring calculation of maximum rates at an increasing percentage, up to 200% of the Alaska average weekly wage. Ch. 93, sec. 16–18, 27, SLA 1982; *but cf. Wien Air*, 592 P.2d at 363 (section 175's maximum rate table prospectively phases in increases; it has no retroactive effect because it does not grant increases to claimants injured before the new maximum rates were passed).

Again, it seems that the Board applied a mechanical formula which does not fairly achieve the legislature's goal of awarding injured employees an amount reasonably representing their future earning capacity. Nor is the Board's decision consistent with *Johnson, Deuser* and *Gronroos. Johnson* requires the Board to calculate Peck's claim under the 1964 version of AS 23.30.-220(3). Under this analysis, because the disparity between Peck's 1964 and 1982 weekly wages is so great, it would be grossly unfair to apply the 1964 version of section 175(b)'s maximum limitation of $81 in order to compensate Peck for his lost earning capacity. Thus we hold that section 175 is not to be applied mechanically where to do so would negate the legislative intent underlying section 220(3). Therefore, the Board's determination of Peck's permanent total disability benefits is REVERSED and REMANDED for recalculation.[3]

MATTHEWS, J., not participating.

---

**3.** Insurers assert that the right of an injured employee to compensation arises from the contractual relationship existing between the employee and the employer at the time of the injury, that the statute then in force forms a part of the contract and determines substantive rights and obligations between the parties. Insurers argue that retroactive application of statutory amendments which affect the nature or extent of the employer's liability violates the United States and Alaska Constitutions' prohibitions against enactments impairing private contracts. U.S. Const., art. I, § 10; Alaska Const. art. I, § 15. *See also Wien Air*, 592 P.2d at 363.

We need not address these arguments in light of our disposition of this action on statutory grounds which do not implicate any issue of retroactive statutory increases in benefits.

Peck also argues that the Board abused its discretion in failing to award actual attorney's fees. In light of our disposition of this action, we do not reach the attorney's fees issue.