**USIBELLI COAL MINE and Providence Washington Insurance Group, Appellants,**

v.

**Robert P. MARX, Appellee.**

**No. S–522.**

Supreme Court of Alaska.

Nov. 15, 1985.

Robert B. Groseclose, Dennis E. Cook, Schaible, Staley, DeLisio & Cook, Inc., Fairbanks, for appellants.

Chancy Croft, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal stems from a Workers' Compensation Board (the Board) decision denying a petition for modification. The superior court reversed the Board and remanded the case with instructions to award Marx permanent total disability benefits. Marx's employer, Usibelli Coal Mine (Usibelli), now appeals on the ground that the Board's denial of the petition for modification was supported by substantial evidence. We reverse the superior court and affirm the Board's decision.

Marx injured his right knee in March, 1979 while working as an electrician for Usibelli. He was then 59 years old. The same knee had been injured in 1972, and both injuries required surgery. He received temporary total disability benefits for two years after the 1979 injury.

Marx then applied to the Board for temporary or permanent total disability benefits. Although he had experienced no difficulty with his knee immediately prior to his 1979 injury, Marx stated that after the injury he suffered from frequent and painful "popping" and "catching" in his knee, and that as frequently as once a day his knee would "catch" and sometimes could

not be straightened without assistance. Marx claimed that because of these problems he was unable to return to his former job and was unable to work as a lineman or truckdriver, jobs which he had held previously. He has not been employed since his 1979 knee injury.

Several months after his injury, Marx took disability retirement from the Teamster's Union in order to maintain his wife's medical insurance. He stated that he was eligible for disability retirement on the basis of his doctor's report that did not release him for work, and that a certificate of disability was issued to him by the Social Security Administration. Marx also testified that Roger Kempfer of the Department of Vocational Rehabilitation (DVR) told him that rehabilitation would not be feasible because of his injury and the type of work he had done in the past.

Marx's treating physician, Dr. Francis Kelly, rated his permanent disability at 50%. Dr. Kelly expressed "serious doubt" that Marx ever could return to his former job. Dr. Kelly further thought that retraining would probably be impractical at Marx's age.

Dr. James Gollogly, an orthopedist who examined Marx at Usibelli's request, agreed that Marx's knee problem prevented him from returning to his former job but concluded that the knee injury

> ... does not obviously prevent him from working. However I have no doubt that he will never return to the work he did before .... I have no doubt that he injured himself at work. I do have some doubts as to whether the injury was serious enough to cause all these problems later, and to cause him to take 3 years off work.

The Board rejected Marx's claim for permanent total disability benefits, concluding that his injury did not prevent him from returning to work as an electrician. The Board noted that he had wired and plumbed his home since his 1979 injury.[1] The Board also observed that "[n]o doctor

---

1. With his son's help, Marx was able to do electrical and plumbing work on his home. He said that he only could do this work slowly and with a great deal of pain.

has commented on the employee's ability to work as a Teamster." It rejected Marx's testimony regarding the DVR as hearsay. The Board found that Marx's impairment when "coupled with his background, age, education [Marx is a high school graduate] and experience does not establish even a *prima facie* case that Mr. Marx is in the [odd-job] category."[2]

The Board also held that Marx was not entitled to temporary total disability benefits. Marx had contended that he was entitled to these benefits because his condition was not stable and he had not been released for work. The Board instead relied on Dr. Gollogly's opinion that Marx's condition was stable. The Board noted that while it has awarded temporary benefits when an applicant has a stable scheduled rated injury, it has done so only when the applicant is involved in vocational rehabilitation. The Board found that Marx had withdrawn from the labor market since he had not made "any efforts" to investigate possible job opportunities and had retired from the Teamster's Union.

Marx did not appeal the Board's decision within the period prescribed by AS 23.30.-125(a),[3] but instead, six months after the Board's decision, filed a petition for modification pursuant to AS 23.30.130(a),[4] arguing that there was a change in his condition since the Board's 1982 order. Specifically, Marx contended the following: 1) the Social Security Administration determined that he was totally disabled; 2) he had sought assistance from DVR and a private contractor but was unable to return to work; 3) his physician, Dr. Kelly, stated that he was unable to return to work.

No hearing was held on the petition, but Marx was permitted to submit additional evidence. The new evidence included a 1983 letter from Dr. Kelly and a 1983 report from DVR counselor Roger Kempfer.

Dr. Kelly's letter stated as follows:

I feel that the patient is not able to perform work as an electrician or truck driver. I freely admit that he is 63 years old and this limits his re-trainability, although he is an intelligent and otherwise younger in appearance man than 63 and perhaps some effort to find him some light work would be rewarded with his grateful appreciation and a better way to make a living.

Dr. Kelly also noted that Marx had undergone a third knee operation and that he might require a fourth operation.

Kempfer's report stated that:

You [Marx] have a significant disability, which precludes an employment which you have done in the past. You indicate that $2,000.00 is a minimum livable income and ... I feel that the amount of retraining which it would take to bring you to that level of income is not reasonable considering your nearness to retirement age of 65.

The Board declined to modify its 1982 order. The Board emphasized that it had reviewed only its "original decision and order and all evidence in post-hearing pleadings submitted by the parties." It held that social security determinations were not binding on the Board, and observed that the social security administration's decision was based in part on Marx's pre-1979 condition. The Board noted that while

---

**2.** In *J.B. Warrack Co. v. Roan,* 418 P.2d 986, 988 (Alaska 1966), this court stated:

[T]he "odd-job" man is a nondescript in the labor market, with whom industry has little patience and rarely hires.

**3.** AS 23.30.125(a) provides: A compensation order becomes effective when filed in the office of the board ... and, unless proceedings to suspend it or set it aside are instituted ... it becomes final on the 31st day after it is filed.

**4.** AS 23.30.130(a) provides:

Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions ... or because of a mistake in fact in its determination of a fact, the board may, before one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or before one year after the rejection of the claim, review a compensation case .... [T]he board may issue a new compensation order which terminates, continues, reinstates, increases or decreases the compensation, or award compensation.

Kempfer thought that Marx was unsuitable for retraining, Kempfer's report indicated that this conclusion was based on Marx's age and desire to earn at least $2,000.00 per month rather than on his work-related injuries. Finally, the Board noted that Dr. Kelly had reported that Marx was capable and in need of retraining. The Board once again concluded that Marx had "voluntarily withdrawn himself from the labor market for reasons unrelated to his work-related injuries." Marx appealed the Board's modification decision to the superior court.

Finding that "the Board's decision had only 'extremely slight supporting evidence' and seemingly ignored a plethora of evidence to the contrary," the superior court reversed the Board's decision and remanded the case with instructions to award Marx permanent total disability benefits.

According to the superior court, it had been presented with a "very close question."

> The Board has evidence before it that the appellant could have returned to work. However, there is substantial evidence indicating that appellant could not be retrained and could not work in the areas for which he was trained and accustomed to doing.

> After reading the two opinions of the Board and carefully reviewing all of the documents which constitute the record in this case, this court is convinced that the Workers' Compensation Board, for whatever reason, has totally ignored all evidence which is supportive of Mr. Marx's claim and has placed unwarranted and sometimes incorrect reliance upon any evidence which would defeat Mr. Marx's claim.

 It is undisputed that in arriving at its decision, the superior court reviewed the entire administrative record. The Board, on the other hand, did not review the entire administrative record in arriving at its decision on modification. It considered only the new evidence submitted by the parties, along with its original decision and order. In this appeal Usibelli argues that by looking beyond the Board's decision and order and post-hearing pleadings, and reviewing the entire record, the superior court exceeded the proper scope of review.[5] We discussed the scope of appellate review of Board modification decisions in *Interior Paint Co. v. Rodgers,* 522 P.2d 164 (Alaska 1974), where we stated:

> We find that an examination [by the Board] of all previous evidence is not mandatory whenever there is an allegation of mistake in determination of fact under AS 23.30.130(a). A requirement of automatic full review would be particularly susceptible to abuse:

>> The concept of "mistake" requires careful interpretation. It is clear that

---

**5.** Arguably, Usibelli waived its right to raise this issue because it failed to object to Marx's characterization of the scope of the record before the superior court, and even urged the superior court to consider the entire record. However, we conclude that the issue is properly before us. Alaska law does not require that a party address the scope of review in its briefs. In many cases the entire agency file should be part of the record before a superior court reviewing a modification decision so that it can determine whether the Board gave "due consideration" to the modification petition, including "any argument and evidence" presented with it. *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 169 (Alaska 1974). Furthermore, we note that Marx never asserted that Usibelli waived its right to object to his characterization of the scope of the record.

Federal courts when faced with similar questions have concluded that an issue raised for the

first time on appeal may be addressed if the following requirements are met: 1) the issue is purely legal in nature, i.e., it is capable of being completely resolved without further factual development; 2) the issue has been fully briefed by both parties; and 3) the affected party is not unfairly prejudiced, i.e., the party would not have tried its original case differently, by developing either new facts or additional theories in opposition, had the issue been raised earlier. *See, e.g., R.R. Yardmasters of America v. Harris,* 721 F.2d 1332 (D.C.Cir.1983); *U.S. v. Aulet,* 618 F.2d 182 (2d Cir.1980); *U.S. v. Patrin,* 575 F.2d 708, 712 (9th Cir.1978). *But see Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir. 1979). We conclude that since the question of the scope of review is purely one of law, was fully briefed by both sides, and does not unfairly prejudice Marx, we are free to consider it.

an allegation of mistake should not be allowed to become a back-door route to retrying a case because one party thinks he can make a better showing on the second attempt. 3 Larson, The Law Of Workmen's Compensation § 81.52, at 354.8 (1971).

Although the Board "may" review a compensation case, and this review can consist merely of further reflection on the evidence initially submitted, it is an altogether different matter to hold that the Board must go over all prior evidence every time an action is instituted under AS 23.30.130(a). Such a requirement would rob the Board of the discretion so emphatically upheld in *O'Keeffe v. Aerojet-General Shipyards, Inc.,* [404 U.S. 254, 256, 92 S.Ct. 405, 407, 30 L.Ed.2d 424 (1971)].

*Interior Paint Co. v. Rodgers,* 522 P.2d at 169.[6]

■ Marx agrees with Usibelli that error is committed when the reviewing court goes beyond the evidence considered by the Board. However, Marx's characterization of the evidence the Board considered on modification is different than Usibelli's.

According to Marx, the Board could not have decided whether there was a change in condition regarding Marx's injury without "at least a perfunctory review of the evidence which it felt supported the decision and order." In other words, the Board could not have decided whether Marx's condition had changed without reviewing its former decision, including the entire underlying evidentiary record.[7] While Marx's argument has some intuitive appeal, it is clear that the Board did not need to review its entire previous administrative record to deny Marx's modification petition since it rejected all the evidence Marx submitted as indicative of a change in condition as not

binding, cumulative, or simply unconvincing. Thus, the superior court erred by going beyond the record before the Board on modification as well as by reweighing the evidence that was before the Board in its initial hearing of Marx's claim. The scope of judicial review of the Board's findings is limited by the standard of substantial evidence:

> This standard restricts the court on review to considering only whether the administrative findings of fact are supported by substantial evidence, and whether the award is contrary to law. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The Board's decision need not be the only possible solution to the problem, for it is not the function of the court to reweigh the evidence or choose between competing inferences, but only to determine whether such evidence exists.

(Footnotes omitted). *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 169–70 (Alaska 1974). We now consider the evidence before the Board in the instant case.

■ Marx's allegation that his condition had changed was based on three items of evidence: the Social Security Administration's determination that he was totally disabled, Kempfer's report that retraining was not feasible, and Dr. Kelly's letter stating that he was unable to return to work as either an electrician or as a truck-driver and that he had undergone another knee operation since 1982.

The Board was already aware that Marx had been declared totally disabled by the Social Security Administration since he had testified to that effect at the 1982 hearing. Being found totally disabled did not constitute a "change," insofar as the determina-

---

**6.** In *Interior Paint,* the employee's petition for modification alleged "mistake of fact," not, as here, "change in condition." However, the policy concerns underlying *Interior Paint* and the case at bar are the same.

**7.** Marx also contends that if there is any "ambiguity" in the Board's explanation of what it reviewed, such ambiguity should be resolved in

his favor, arguing by analogy from the established rule that ambiguity in workers' compensation statutes should be resolved in the employee's favor. *See e.g., State v. Dupree,* 664 P.2d 562 (Alaska 1983). This argument is meritless. The Board's statement of what it reviewed is simply not ambiguous.

tion took place prior to the original hearing and thus was not based on new evidence.[8] *See Kington v. Zeigler Coal Co.*, 639 S.W.2d 560 (Ky.App.1982) (finding of total disability by Social Security Administration was not a "change of condition" or "newly discovered evidence" justifying reopening denial of claim for black lung disease; finding by another agency not binding on board).

In the Board's opinion, Kempfer's report showed that Marx was unsuitable for retraining because of his age and desire to earn $2,000 per month, and not because of his work-related injury. While this seems a somewhat ungenerous reading of Kempfer's report, which also stated that Marx had suffered a "significant disability," it cannot be said that the Board's interpretation of the report lacked substantial evidence to support it. In any case, Kempfer's report is not indicative of a change in condition. Marx gave hearsay testimony regarding his conversation with Kempfer at the 1982 hearing. Documentary support of this former testimony does not indicate in itself that any change in condition occurred.

Dr. Kelly's opinion of Marx's condition was essentially the same as it was in the original hearing. The 1983 letter added only that, in Dr. Kelly's opinion, Marx could not return to work as a truckdriver. However, Dr. Kelly's letter also implied that Marx was capable of retraining. Dr. Kelly did not state that a change in Marx's condition occurred subsequent to the 1982 hearing.

In sum, none of the evidence that Marx introduced in support of his modification petition supports a finding of change in his condition. Therefore, the Board's decision to deny Marx's petition for modification meets the substantial evidence standard. *Delaney v. Alaska Airlines*, 693 P.2d 859, 863 (Alaska 1985).

8. Moreover, Marx did not supply any documentation of the Social Security Administration's

For the foregoing reasons we reverse the superior court's decision and affirm that of the Board.

