William J. MANTHEY, d/b/a Lemon Creek Sand and Gravel Company and Underwriters at Lloyds of London, Appellants,

v.

James COLLIER and Alaska Workmen's Compensation Board composed of B. G. Johnson, Chairman, A. D. Wallace, Member, and L. H. Shaffer, Member, Appellees.

No. 94.

Supreme Court of Alaska.

Jan. 11, 1962.

Robert Boochever, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellants.

R. J. Annis, of Robertson, Monagle, Eastaugh & Annis, Juneau, for appellee James Collier.

Ralph E. Moody, Atty. Gen., State of Alaska, for appellee Alaska Workmen's Compensation Board.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an appeal from a judgment of the superior court which affirmed an award made by the Alaska Industrial Board in favor of the appellee. Appellee's injury was sustained before the repeal of The Workmen's Compensation Act of Alaska [1] and the subsequent enactment of a new compensation statute. The new act does not concern us here.

On August 20, 1956, Collier, the appellee, sustained an injury which arose out of and in the course of his employment with the appellant Manthey. The parties apparently disagreed in regard to the compensation payable and Collier made application to the Board for adjustment of his claim. A hearing was held on the application and on November 19, 1957 the Board rendered a decision in which medical expenses and compensation for temporary disability were awarded. The Board denied Collier compensation for permanent partial disability. This decision became "final" without appeal [2] and is only indirectly in issue.

On February 17, 1959 Collier petitioned the Board requesting that it review its prior decision and that it grant him "temporary disability payments from November 28, 1958 to date, plus medical expenses, and an adequate allowance for permanent partial disability * * *." The petition alleged in part that, " * * * this applicant's condition, resulting from the injury received in the course of his employment, has worsened to an extent that he is now totally disabled and requires further medical attention."

Over the objection of the appellants herein, the Board reviewed its prior decision and rendered an order and award, later amended. As amended, the Board's decision granted Collier $3600 compensation for a twenty-five per cent permanent partial disability.

■ Appellants contend that the reopening provisions [3] of the workmen's compen-

---

1. Sections 43-3-1 through 43-3-39 A.C.L.A.1949, as amended by chapter 104 S.L.A.1949, chapter 133 S.L.A.1951, chapter 24 S.L.A.1953, chapter 60 S.L.A. 1953, and chapter 141 S.L.A.1955.

2. Section 43-3-22 A.C.L.A.1949 provided, in pertinent part, that: "An award of the Board, by less than all of the members, as provided in Section 15 [§ 43-3-15 herein], if not reviewed as provided in Section 16 [§ 43-3-16 herein], shall be final and conclusive.
   "An award by the full Board shall be conclusive and binding as to all questions of fact; but either party to the dispute, within thirty days from the date of such award, if the award is not in accordance with law, may bring injunction proceedings, mandatory or otherwise, against the Industrial Board, to suspend or set aside, in whole or in part, such order or award. * * *"

3. Section 43-3-4 A.C.L.A.1949 provided, in pertinent part, that:

   "If an injured employee [is] entitled to compensation under any subdivision or part of this schedule, and it shall afterwards develop that he or she is or was entitled to a higher rate of compensation under same or some other part of [sic] subdivision of this schedule, then and in that event he or she shall receive such higher rate, after first deducting the amount that has already been paid him or her. To that end the Industrial Board is hereby given and granted continuing jurisdiction of every claim, and said Board may, at any time and upon its own motion or on application, reveiw [sic] any agreement, award, decision or order, and on such review, may make an order or award ending, diminishing or increasing the compensation previously awarded, ordered, or agreed to * * *. [P]rovided, however, that no compensation under such increased rate shall be paid unless the disability entitling the employee thereto shall develop and claim be presented within three (3) years after the injury."

sation statute did not permit the Board to award Collier compensation for a permanent partial disability after it had previously denied him such an award. They base their argument upon the statutory language "higher rate" and "ending, diminishing or increasing the compensation previously awarded." This language, they argue, indicates that the reopening section contemplated the existence of a prior award which could be ended, diminished or increased and, since there was a previous denial of an award, there was nothing to end, diminish or increase.

Collier was granted at the Board's prior decision compensation for temporary disability under a paragraph of section 43–3–1 (8) entitled "Temporary disability." [4] That paragraph and section 43–3–4 show clearly a legislative recognition that the nature and effect of an injury are, in many instances, subject to change. More particularly, section 43–3–4 contemplated continuing jurisdiction "of every claim" in every case in which a claimant is awarded, in a prior decision, compensation under any subdivision or part of the schedule. The words in that section "To that end" give clear indication that the legislature intended that all the language preceding the words "and, on such review" carve out the Board's review jurisdiction. There is no basis, save the casuistic reasoning employed by the appellants, for the contention that the legislature intended that the language following the words "and on such review" be given the effect of narrowing the jurisdiction already conferred earlier in the section.

Appellants cite several cases from other jurisdictions in support of the significance they attribute to the words "ending, dimin-

ishing or increasing the compensation previously awarded." Discussion of these cases is not warranted since they were decided upon compensation statutes materially dissimilar to ours and upon particularly unpersuasive reasoning.

█. The next contention advanced by appellants is based upon a Board finding which is stated in its prior decision on Collier's claim: "The evidence failed to indicate any permanent partial disability due to the injury of August 20, 1956." Appellants argue that this statement amounts to a finding that a causal connection did not exist between Collier's injury and his alleged permanent partial disability and that section 43–3–22 [5] did not permit the Board to retry this issue in a reopening proceeding under section 43–3–4. We do not reach the latter argument since it does not appear to us that the Board made such a finding.

The above quoted statement is concededly ambiguous. However, the statement is preceded by the following "findings":

"Immediately after October 12, applicant returned to his former home in Oklahoma where on October 24 he consulted Dr. Brighton who at that time felt that applicant had some disability with reference to his back and elbow and was of the opinion that this condition would improve within a two week's [sic] period of treatment. The doctor found that he was able to return to his regular work on November 8, 1956. The applicant subsequently did return to his regular employment as a cement finisher and performed arduous work almost continuously from January 24, 1957 to the middle of October 1957 at which time his job was terminated

4. The paragraph of § 43–3–1 (8) A.C.L.A. 1949, referred to in the opinion, provided that

"For all injuries causing temporary disability, the employer shall pay to the employee, during the period of such disability, sixty-five per centum (65%) of his daily average wages. *And in all cases where the injury develops or proves to be such as to entitle the*

*employee to compensation under some provision in this schedule, relating to cases other than temporary disability,* the amount so paid or due him shall be in addition to the amount to which he shall be entitled under such provision in this schedule." (Emphasis supplied.)

5. Supra note 2.

due to a general lay off of employees and not due to any dissatisfaction with his ability to work. Applicant's average daily wages at the time of his injury were $22.23 per day * * *."

The above quoted language and the evidence then before the Board, coupled with the lack of any basic findings which would support an ultimate finding that causality was lacking, persuade us that the Board found merely that Collier, up to the time of this first hearing, had suffered no permanent loss in his earning capacity.

We come now to the question whether, with respect to the Board's decision upon its review of Collier's claim, the superior court erred by failing to adhere to the requirements of the Administrative Procedure Act.[6] The act became effective prior to the time appellant sought review by the superior court of the Board's action. Collier contends that the superior court was not bound by the review provisions of the act. In support of this contention he argues that his "rights" under The Workmen's Compensation Act of Alaska were preserved to him by the Alaska saving statute;[7] in particular the scope of judicial review conferred in section 43–3–22[8] of the compensation act as interpreted by the courts of Alaska.

■ A change in the judicial scope of review over the Board's action does not work an impairment of a claimant's substantive rights under The Workmen's Compensation Act. Therefore, the legislature was not prevented by either federal or state

constitutional provisions from changing the scope of judicial review.[9]

We assume without deciding that the scope of judicial review as provided in section 43–3–22 is a "right accruing or accrued" within the meaning of the saving statute. The saving statute provides that a repealing or amendatory statute "shall not have the effect to release or extinguish" such a right, "unless the repealing or amending act shall so expressly provide."

Section 2A–12–2 of the Administrative Procedure Act[10] provides specifically that the procedure of the Alaska Industrial Board shall be conducted pursuant to the provisions of the act "despite similar provisions in the statute dealing with" the Alaska Industrial Board. This section also provides that "procedure" shall include judicial review and scope of judicial review.

■ The Administrative Procedure Act further provides in section 32 that

"All laws inconsistent or in conflict with this Act shall be deemed repealed or amended in accordance with the provisions herein."[11]

The inclusion of this section and section 2A–12–2 indicates clearly that the legislature was aware of the saving statute and that it intended to substitute, upon the effective date of the Administrative Procedure Act, the judicial scope of review as provided therein for the judicial scope of review as provided in the workmen's compensation act. We hold, therefore, that the superior court was bound, in this case, by

6. Sections 2A–11–1 through 2A–12–32 A.C.L.A.Cum.Supp. (Supp.1959).

7. The saving statute, § 19–1–1 A.C.L.A. 1949, as amended by S.L.A.1959, ch. 28 [§ 19–1–1 A.C.L.A.Cum.Supp. (Supp.1959)], provides, in pertinent part, that:
   "The repeal or amendment of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such statute, *unless the repealing or amending act shall so expressly provide*, and such statute shall be treated as still remaining in force for the purpose of sustaining any prop-

er action or prosecution for the enforcement of such right, penalty, forefeiture, [sic] or liability. * * *" (Emphasis supplied.)

8. Supra note 2.

9. See Bidwell v. Scheele, No. 14, 355 P. 2d 584 (Alaska, 1960).

10. Section 2A–12–2 A.C.L.A.Cum.Supp. (Supp.1959).

11. S.L.A.1959, ch. 143, art. VII, § 32. [This section appears to have been inadvertently omitted from the statute as it appears in A.C.L.A.Cum.Supp. (Supp. 1959).]

888

the review provisions of the Administrative Procedure Act.[12]

The Administrative Procedure Act became effective prior to the time Collier petitioned the Board to review its prior decision. It follows from what we have held with respect to the application of that act that from the time it became effective it controlled all the procedural aspects of Collier's claim. Section 2A–12–19 of the act provides that the Board's decision "shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any." [13] The Board's decision, upon review of Collier's claim, contained "findings of fact" which, apart from an unhelpful recitation of the history of the case, stated that:

"In a previous Order and Award of the Alaska Industrial Board dated November 19, 1957 applicant was awarded temporary total disability compensation for the period of October 15 to November 8, 1956 in the amount of $357.80 plus interest at 8% annum from December 8, 1956, a penalty of 10%, and medical expenses.

"Since the termination of his employment with defendant employer, applicant left Alaska and over a period of time was employed by various companies as a truck driver, cement finisher, concrete patcher, and delivered milk for a dairy company. He had also leased, at separate times, two automobile service stations, and managed such stations. These various occupations were of a much-less strenuous nature than that under the employ of the defendant. At the present time, applicant is employed by a radio station as a watchman."

Upon the above findings the Board based a decision that Collier was entitled to an award of compensation for a 25% permanent partial disability. Such findings did not provide a proper basis for the award and provided the basis for no more than a perfunctory review by the superior court.

■ Section 43–3–1 of the workmen's compensation statute [14] required that the degree of permanent partial disability was to be calculated by determining loss of earning capacity. Awards are not to be made for physical injury as such, but for "disability" produced by such injury. A compensable "disability" under this section is equated with an impairment of earning capacity.[15] Therefore, an award must be

12. Section 2A–12–25 A.C.L.A.Cum.Supp. (Supp.1959). Only the first two subsections of this section are pertinent to the view we take of this case. They provide that:
"(1) All appeals shall be heard by the Superior Court sitting without a jury.
"(2) The inquiry in such a case shall extend to the questions whether the agency has proceeded without, or in excess of jurisdiction; whether there was a fair hearing; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

13. Section 2A–12–19 A.C.L.A.Cum.Supp. (Supp.1959).

14. Section 43–3–1(8) A.C.L.A.1949, in a paragraph entitled "Other permanent partial injuries," provided, in pertinent part, that:
"Whenever such employee receives an injury, arising out of and in the course of employment, as a result of which he or she is partially disabled, and the disability so received is such as to be permanent in character and such as not to come wholly within any of the specific cases for which provision is herein made, such employee shall be entitled to receive as compensation a sum which bears the same relation to the amount he or she would be entitled to receive hereunder if he or she were totally and permanently disabled *that the loss or [sic] earning capacity such employee by reason of the injury, bears to the earning capacity such employee would have had had he or she not been injured* * * *." (Emphasis ours.)

15. "The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of

supported by an ultimate finding that the claimant has suffered a compensable disability, or more precisely, a decrease in his earning capacity. This ultimate finding must, in turn, be based upon basic fact findings which relate to inability to earn wages, as evidenced by proof of a disparity between wages earned before and after the injury was sustained, and to the claimant's physical condition.

■ In a reopening proceeding to modify an award the issue before the Board was restricted to the extent of improvement or worsening of the disability since the time of the prior decision.[16] The Board should have made an ultimate finding on this issue and such a finding should have been based upon basic findings which relate to evidence on change in the disparity between wages earned before and after the injury was sustained and to the evidence on change in the physical condition of the claimant.

■ The written decision of the Board contains no such findings. We interpret section 19 of the Administrative Procedure Act to require such findings. The Board abused its discretion in failing to follow the mandate of the act. The superior court should have, in the proper exercise of its review jurisdiction, set aside the Board's order and remanded the case for adequate findings. In not doing so, the court committed reversible error.

The point concerning the inadequacy of the Board's findings was not urged below.

This court can, however, consider manifest error appearing on the face of the record.

The view we take of this case makes it unnecessary to consider further errors specified by appellants. We must remand the case to the superior court with direction that that court remand the case to the Board in order that the Board make findings in accordance with the views set forth in this opinion.

Reversed and remanded.

NESBETT, C. J., concurs.

SEPARATE OPINION

DIMOND, Justice.

I agree with the majority's construction of Section 43–3–4 in that it allows a reopening of the case for the purpose of awarding compensation for permanent disability which did not exist at the time of the first hearing. As the court correctly points out, the nature and effect of an injury are in many instances subject to change. An injury which at first appears to have caused only temporary disability may later develop into damage of a permanent nature. It was to take care of such a contingency that the Board was given continuing jurisdiction over a claim for a period of three years after the injury.

But I disagree with the court's decision not to determine what I consider to be the principal issue in the case: whether Section 43–3–22 [1] permits the Board to retry an

two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: the first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything." 2 Larson, Workmen's Compensation Law § 57.10 (1952).

16. The Board should consider, in connection with this issue, change in the physical condition of the claimant if there is any, and any change in the claimant's inability to get a job or reduction of his

earnings because of his crippled condition. See Larson, supra note 15, §§ 81.-31, 81.32; Ray v. Frenchmen's Bay Packing Co., 122 Me. 108, 119 A. 191, 33 A.L.R. 112 (1922); Steward v. Industrial Comm., 69 Ariz. 159, 211 P.2d 217, 226, 231 (1949).

1. Section 43–3–22 A.C.L.A.1949 provides in part that "An award by the full Board shall be conclusive and binding as to all questions of fact; but either party to the dispute, within thirty days from the date of such award, if the award is not in accordance with law, may bring injunction proceedings, mandatory or otherwise, against the Industrial Board, to suspend or set aside, in whole or in part, such order or award."

issue of fact in a reopening proceeding under Section 43–3–4.

At the first hearing in November 1957 there was evidence that Collier had incurred some permanent partial disability. In his report of October 31, 1956 Dr. Brighton stated that Collier had suffered from a bursitis of the right elbow and a muscular strain of the lower back, and that he was then disabled 20% in the use of his back and 25% in the use of his right elbow. On October 31, 1957 Dr. Harsha reported that Collier had "moderately advanced degenerative and traumatic arthritis to his lumbar spine", and that the injury "accelerated his arthritic status so that it is now an asymptomatic state." He concluded that Collier had a permanent partial disability rating, related to the accident of September 1956, in the amount of 30% of the body as a whole related to the back, and 20% to the right elbow.

At the conclusion of this hearing the Board found that "The evidence fails to indicate any permanent partial disability due to the injury of August 20, 1956". The court has construed this as meaning the Board merely found that Collier, up to the time of the first hearing, had suffered no permanent loss in earning capacity. In the light of evidence before the Board, I cannot see that such an interpretation of the decision is justified. It means, in effect, that the court has ignored the words "due to the injury of August 20, 1956", and has read the Board's findings as saying only that "The evidence fails to indicate any permanent partial disability." But there was in fact evidence "indicating" such disability. Logically, then, the Board must have had in mind not that there was no such disability at all, but that there was none attributable to the 1956 injury. To

me this has only one meaning: that there was no causal connection between the injury of August 20, 1956 and the permanent partial disability which was indicated by the evidence produced at the first hearing.

On Collier's petition for modification of the award, the Board reopened the case and conducted another hearing in February 1960. In its order and award of February 29 it concluded that "as a result of the accident of August 20, 1956 applicant has incurred a 25% permanent partial disability." Implicit here was the finding that a causal connection did exist between Collier's accidental injury and his condition of permanent disability. This involved nothing more than a reconsideration of the factual question that had already been decided adversely to Collier's contentions in 1957.

The main question, then, with which we are faced is whether the Board under Section 43–3–4 has the authority to redetermine questions of fact. I submit it does not. Under Section 43–3–22 the award is "conclusive and binding as to all questions of fact", unless tested in a court proceeding commenced within 30 days. If this language has any meaning at all, one is forced to the conclusion that once the factual question of causality between injury and disability has been decided, and no appeal has been taken, the Board is thereafter foreclosed from reconsidering that same question and reversing itself at a subsequent hearing.[2] A claimant may not retry the issue of work-connection through the device of a reopening petition.[3]

It is my opinion, therefore, that the judgment should be reversed and the case remanded with directions to the superior court to vacate the Board's award and to enter judgment for the appellants.

2. Suryan v. Alaska Industrial Bd., 12 Alaska 571 (D.Alaska 1950); Weymer v. Industrial Comm., 404 Ill. 271, 88 N.E.2d 841 (1949).

3. 2 Larson, Workmen's Compensation Law § 81.32, at 333 (1952).