Richard F. DEUSER, Appellant,

v.

STATE of Alaska, Appellee.

No. S–243.

Supreme Court of Alaska.

March 22, 1985.

Judith J. Bazeley and Richard F. Deuser, Anchorage, for appellant.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Under former AS 23.30.185, an injured worker was entitled to temporary total disability payments which were two-thirds of his weekly wage.[1] AS 23.30.220 prescribed how average weekly wage was determined. It provided:

> Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis for computing compensation, and is determined as follows:
>
> .   .   .   .   .
>
> (2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

> (3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board....

The question presented here is whether the board erred in calculating Richard Deuser's average weekly wage under subsection (2), rather than subsection (3) of this statute.

On March 23, 1981, Deuser was injured when a snow machine on which he was riding collided with another snow machine. Deuser was employed at the time in the Bethel Service Area as an acting district court judge with circuit riding responsibilities. He was traveling on circuit between villages when the accident occurred.

As a result of the accident, Deuser was seriously injured and was unable to continue to work. After twenty-five weeks of total disability he began working as an attorney in Anchorage.

Under AS 23.30.220, the first step in the calculation of average weekly wage is to look at the total wages earned in any one of the three calendar years preceding the injury. In 1978, Deuser, who graduated from law school in 1976, was employed until July 1 by an Anchorage law firm, earning $2,000 per month. At that time, he terminated his employment in order to travel in Europe. His average weekly wage for 1978, using the formula required by § 220(2)(dividing total wages by fifty-two) was approximately $283.

In 1979, Deuser returned from Europe in the middle of February and in late March began doing research for other attorneys. Deuser earned approximately $15,600 doing contract research. In September, he began to work as an associate for an attorney in Bethel. His salary as an associate of the Bethel attorney was $2,500 per

---

1. This section and AS 23.30.220 were substantially changed in 1983. §§ 6, 12 ch 70 SLA 1983. These changes do not apply to this case.

month. His total earnings for 1979 were $24,357, yielding an average weekly wage of $468.

During 1980, Deuser continued to serve as an associate of the Bethel attorney until July 1, 1980, at the monthly salary at which he was hired. Disappointed because his employer was not interested in forming a partnership, Deuser opened his own law practice in Bethel. In November, however, he accepted an offer of employment as a circuit riding acting district court judge to start February 2, 1981, and immediately began to wind down his practice. As a sole practitioner, Dueser earned about $3,000 after expenses, which when added to his income as an associate, yielded a total income for the year 1980 of $18,535.47. His average weekly wage for 1980 was therefore $356.

Deuser's weekly wage as an acting district court judge was approximately $970. The term of his appointment was six months. Deuser presented evidence that he would have been offered the position for an extended six month term but was unable to accept the offer because of his injury. He accepted employment with an Anchorage law firm on September 15, 1981, at a salary of $769 per week.

The Board selected Deuser's 1979 earnings to establish his average weekly wage. The Board found that the subsection (2) calculation did not result in substantial unfairness. It reasoned that the fact that Deuser did not work during the first quarter of 1979 was a voluntary decision on his part that did not render the subsection (2) calculation of average weekly wage unfair. Acknowledging that Deuser had presented evidence tending to show that he would have completed two six month terms as an acting district court judge except for his injuries, the Board focused on the fact that it would be speculative to assume that he would have been appointed to a permanent position as district judge.

█ "The objective of AS 23.30.220 is to formulate a fair approximation of a claimant's probable future earning capacity during the period in which compensation benefits are to be paid." *Johnson v. RCA-OMS, Inc.,* 681 P.2d 905, 907 (Alaska 1984). Deuser's twenty-five weeks of temporary disability were suffered during the period in which he probably would have been serving as an acting district court judge. The disparity between Deuser's probable future earnings during the period of disability, $970 per week, and the average weekly wage yielded by application of the subsection (2) formula, $468 per week, is substantial.

In *Johnson,* we concluded that a discrepancy between average weekly wages computed under subsection (2) of $387 and probable future weekly wages of $1,000 was "so substantial that application of the subsection (2) formula clearly does not fairly reflect [the claimant's] wage-earning capacity. The Board should, therefore, have calculated [the claimant's] average weekly wage under subsection (3)." *Id.* at 907. We reach the same conclusion in this case.

The fact that Deuser's job as an acting district court judge may have lasted for only one year cannot be regarded as a justification for discounting the temporary disability payments to be received during this period.

An estimate of earning capacity is a prediction of what an employee's earnings would have been had he not been injured. Earning capacity, for the purposes of a temporary award, however, may differ from earning capacity for the purposes of a permanent award. In the former case the prediction of earnings need only be made for the duration of the temporary disability. In the latter the prediction is more complex because the compensation is for loss of earning power over a long span of time. Thus an applicant's earning capacity could be maximum for a temporary award and minimum for a permanent award or the reverse. Evidence sufficient to sustain a maximum temporary award might not sustain a maximum permanent award. In making an award for temporary disability, the Commission will ordinarily be concerned with whether an applicant

would have continued working at a given wage for the duration of the disability. In making a permanent award, long-term earning history is a reliable guide in predicting earning capacity, although in a variety of fact situations earning history alone may be misleading.

*Argonaut Insurance Co. v. Industrial Accident Commission*, 57 Cal.2d 589, 21 Cal. Rptr. 545, 548, 371 P.2d 281, 284 (1962). If permanent disability payments extending into the indefinite future were in question, the fairness question posed by subsection (3) might have a different answer.

Further, when the Board made the fairness determination, it erred in concluding that it should ignore Deuser's travel and resulting unemployment in the first quarter of 1979 on the grounds that his unemployment was voluntary. The real question is not the voluntariness of the unemployment, but whether the unemployment is likely to be repeated during the relevant future.[2] Deuser's extended vacation was taken not long after he graduated from law school. There is no evidence that Deuser intended to repeat this experience in the foreseeable future.

REVERSED and REMANDED.

---

**2.** 2 A. Larson, Workmen's Compensation Law § 60.21(c), at 10–592 (1983) (If claimant's part-time relation to the labor market is "clear, *and above all if there is no reason to suppose it will change in the future period into which disability extends,* then it is unrealistic to turn a part-time able-bodied worker into a full-time disabled worker") (emphasis in original).