**Gerald R. BRUNKE, Appellant,**

v.

**ROGERS & BABLER and Alaska Pacific Assurance/INA, Appellees.**

No. S–680.

Supreme Court of Alaska.

Feb. 21, 1986.

---

Charles W. Coe, Smith, Coe & Patterson, Anchorage, for appellant.

James R. Slaybaugh, Pletcher & Slaybaugh, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON, and MOORE, JJ.

## OPINION

BURKE, Justice.

In this appeal of an Alaska Workers' Compensation Board ("Board") decision and order,[1] appellant Gerald Brunke contests both the Board's method of computation for a temporary total disability and its denial of permanent partial disability benefits for an unscheduled injury. AS 23.30.-220; AS 23.30.185; AS 23.30.190(a)(20); AS 23.30.210.[2] Our recent decisions interpret-

---

1. The Board's decision was affirmed by the superior court. This appeal arises from the superior court decision issued September 4, 1984.

2. AS 23.30 was substantially amended in 1983. *See* ch. 70, 1983 SLA. The sections cited below are all pre-1983 versions; they apply to this claim as it arose prior to the amendments. AS 23.30.220 provided in part:

Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury is the basis for computing compensation, and is determined as follows:

. . . .

(2) the average weekly wage is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;

(3) if the board determines that the wage at the time of the injury cannot be fairly calculated under (2) of this section, or cannot otherwise be ascertained without undue hardship

ing AS 23.30.220 compel a remand to the Board for computation of Brunke's average weekly wage under AS 23.30.220(3).

## I. STATEMENT OF FACTS AND PROCEEDINGS BELOW

On October 29, 1982, appellant Brunke, a carpenter working for Rogers and Babler ("MAPCO"), lost his balance and fell approximately fifteen feet from the roof of a school under construction in Eagle River. Brunke sustained injuries to his back and shoulder as a result of the fall. Brunke was ultimately released for work on March 7, 1983.

Since his release for work in March 1983, Brunke has only held a few construction jobs. At the time of the Board hearing he was not working at all as there had been no calls from the union hall. The jobs he has worked have lasted approximately a month at a time, with a week or so off between jobs. He testified that when working, he experienced back pain whenever lifting or bending, but apparently had not lost any work due to the injury. He returned to work for MAPCO on light duty after his release, but only worked one week when he was laid off because of economic cutbacks.

At the time of the accident Brunke had been working for MAPCO for approximately three months. MAPCO paid him union scale wages of $24.00 an hour. He had earned $19,600 from MAPCO for a total 1982 income of approximately $23,000. The normal work schedules called for six, ten hour days. This is apparently common in the construction industry.

Since Brunke arrived in Alaska in June 1977, he has supported his family by doing construction work. Because his work is mostly seasonal, Brunke has collected unemployment benefits for some part of every year since 1977. While Brunke maintains his name on the union roster and is available for union jobs, he supplements his income doing odd jobs for cash.

Brunke filed a workers' compensation claim for temporary total disability benefits, medical expenses, adjustment of his compensation rate and unscheduled permanent partial disability based on the October 1982 accident. MAPCO paid a scheduled permanent partial disability benefit for Brunke's shoulder injury, the medical expenses relating to that injury and temporary total disability benefits until Brunke's release for work by Dr. Cates on January

to the employee, the wage for calculating compensation shall be the usual wage for similar service rendered by paid employees under similar circumstances, as determined by the board;
....

AS 23.30.185 provided:
In case of disability total in character but temporary in quality, 66⅔ percent of the injured employee's average weekly wages shall be paid to the employee during the continuance of the disability.

AS 23.30.190 provided, in part:
*Compensation for permanent partial disability.*
(a) In case of disability partial in character but permanent in quality the compensation is 66⅔ percent of the injured employee's average weekly wages ... and shall be paid to the employee as follows:
....
(20) in all other cases in this class of disability the compensation is 66⅔ percent of the difference between his average weekly wages and his wage-earning capacity after the injury in the same employment or otherwise, payable during the continuance of the partial

disability ... whenever the board determines that it is in the interest of justice, the liability of the employer for compensation, or any part of it as determined by the board, may be discharged by the payment of a lump sum;
....
(b) Total compensation paid under (a)(20) of this section may not exceed $60,000.

AS 23.30.210 provided:
In a case of partial disability under AS 23.30.-190(20) or 23.30.200 the wage-earning capacity of an injured employee is determined by his actual earnings if the actual earnings fairly and reasonably represent his wage-earning capacity. If the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the board may, in the interest of justice, fix the wage-earning capacity which is reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.

16, 1983.[3] MAPCO contested Brunke's claims for temporary total disability benefits, medical expenses and permanent partial disability benefits for his back injury.

The Alaska Workers' Compensation Board decided that MAPCO had failed to rebut the presumption of compensability for the back injury with substantial evidence as required by AS 23.30.120.[4] The Board concluded "that employer is liable for compensation and medical benefits relating to [the back injury]." The Board required MAPCO to pay both temporary total disability benefits through March 6, 1983 and all of Dr. Teague's bills.[5] The Board calculated Brunke's average weekly compensation rate pursuant to AS 23.30.-220(2) based upon his 1979 earnings, the highest of the three previous calendar years. It rejected his claim for an adjustment. The Board also rejected Brunke's claim for permanent partial disability benefits for his unscheduled back injury because Brunke did not provide evidence of post-injury wages. The Board stated:

> There is no evidence that employee's post-injury earning capacity is less than his pre-injury average weekly (sic) wage of $8,343.42.

Brunke appealed to the superior court. The superior court affirmed the Board's decision and order, finding that the Board's decision was supported by substantial evidence in the record as a whole.

■ Our review of a decision and order of the Board is limited to questions of law and the substantial evidence test. *Burgess v. Smallwood*, 623 P.2d 312, 317 (Alaska 1981). Since this appeal involves the proper construction of AS 23.30.220 and our recent decisions interpreting that section, our review extends beyond the substantial evidence test used by the superior court.

## II. DISCUSSION

### A. *The Board Should Have Applied Subsection (3) of AS 23.30.220 Rather than Subsection (2) in Computing Brunke's Average Weekly Compensation Rate for Temporary Total Disability Benefits*

The Board relied in part on our decision in *State v. Dupree*, 664 P.2d 562 (Alaska 1983), in refusing to adjust Brunke's compensation rate. The Board did not have the benefit of our decisions in *State v. Gronroos*, 697 P.2d 1047 (Alaska 1985); *Deuser v. State*, 697 P.2d 647 (Alaska 1985); or *Johnson v. RCA-OMS, Inc.*, 681 P.2d 905 (Alaska 1984) when issuing its decision on February 29, 1984. Those decisions have substantially altered *Dupree*'s outline of the scope of the Board's discretion under subsection (3).

*Dupree* was the first case to determine under what circumstances the Board should use its discretion to calculate the appropriate average weekly wage. There the Board had utilized its discretion under subsection (3) to calculate a compensation rate closer to the claimant's earnings at the time of injury. *Dupree*, 664 P.2d at 564.

We held that the Board could not use its discretion to disregard the employee's documented past earnings merely because the Board felt that the employee was unlikely to match those earnings in the future. *Id.* at 566. We based much of our reasoning

---

3. Dr. Cates treated Brunke solely for his shoulder injury and released him for light duty on January 16, 1983.

4. AS 23.30.120 provides:

 (a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
 (1) the claim comes within the provisions of this chapter;
 (2) sufficient notice of the claim has been given;

(3) the injury was not proximately caused by the intoxication of the injured employee being under the influence of drugs unless the drugs were taken as prescribed by the employee's physician;
(4) the injury was not occasioned by the wilful intention of the injured employee to injure or kill self or another.

5. Brunke saw Dr. Teague, a licensed chiropractor, from December 22, 1982 through the summer of 1983 for both back and shoulder pain. Dr. Teague released Brunke for work on March 7, 1983.

in *Dupree* on the legislative history of the federal counterpart to subsection (3). 33 U.S.C. § 910. We stated:

> Review of the legislative history of the federal analogue to subsection (3) indicates that the subsection was designed to permit discretionary computation *only* when the claimant was involved in seasonal, intermittent, or part time employment.

*Id.* at 566 n. 6 (emphasis in original). In *Dupree*, we also reviewed the legislative history of the 1977 amendments to the Alaska Workers' Compensation Act.[6] We determined that in writing subsection (2), the legislature intended "to give the benefit of past earnings history to the employee." *Id.* at 565.

In *Johnson* we backed away from such a narrow interpretation of the Board's discretion under subsection (3). 681 P.2d 905. Johnson had retired after 20 years in the military, with a final preretirement salary of approximately $20,000. *Id.* at 906. He then began working for RCA–OMS, Inc. at $42,000 per year. He was injured while working for RCA. The Board used Johnson's military salary to compute his average weekly wage under subsection (2). *Id.*

We disapproved of the Board's use of subsection (2). We reasoned that "[t]he objective of AS 23.30.220 is to formulate a fair approximation of a claimant's probable future earning capacity *during the period in which compensation benefits are to be paid.*" *Id.* at 907 (emphasis added). We held that where subsection (2)'s application would not yield a fair calculation, the Board may use its discretion under subsection (3). *Id.*

In *Deuser*, we followed *Johnson*. Deuser, an acting district court judge, was injured driving a snow machine while travelling on circuit. Deuser was a recent admittee to the Alaska bar and had a sporadic work record prior to his appointment as acting district court judge. 697 P.2d 647. The Board applied subsection (2). It used Deuser's 1979 earnings to calculate

an average weekly compensation rate, reasoning that such a computation was not substantially unfair. *Id.* at 649. Applying the *Johnson* reasoning we reversed the Board's decision. We concluded that the Board should have calculated Deuser's average weekly wage under subsection (3). *Id.* We rejected the Board's reliance on the voluntariness of Deuser's absence from the job market and the temporary nature of his employment as a judge. *Id.* at 649–50. We stated:

> The fact that Deuser's job as an acting district court judge may have lasted for only one year cannot be regarded as a justification for discounting the temporary disability payments to be received *during this period.*

*Id.* at 649 (emphasis added).

In *Gronroos*, we again reversed the Board and remanded for application of subsection (3) in determining the average weekly compensation rate. 697 P.2d 1047. Gronroos had retired from the National Park Service with a final annual salary of $42,000. *Id.* at 1048. He subsequently took a permanent seasonal position with the State of Alaska, a job lasting approximately six months each year, at $2,000 per month. *Id.* The Board calculated his temporary total disability benefits under subsection (2). It thus gave him the benefit of his full-time work history during the three previous calendar years. *Id.*

Relying on *Deuser* and *Johnson*, we held that subsection (3) should apply. Gronroos' part-time relationship to the labor market was clear; since there was "*no reason to suppose it will change in the future period into which disability extends,*" it was unrealistic to turn a part time disabled worker into a full time disabled worker. *Gronroos*, 697 P.2d at 1049 (emphasis in original, quoting *Deuser*, 697 P.2d at 650 n. 2). In *Gronroos*, we had determined that application of subsection (2) would result in a compensation wage base of over twice Johnson's wage base at

---

6. The 1977 amendment of AS 23.30.220 shifted the emphasis from earnings at the time of injury to past earnings history. *Dupree,* 664 P.2d at 564–65.

the time of injury, a result that did not fairly reflect his probable future earning capacity. *Gronroos,* 697 P.2d at 1049 (discussing *Johnson* ). In *Gronroos,* we concluded that "[i]t is entirely reasonable to focus upon probable future earnings *during the period into which disability extends* when the injured employee seeks temporary disability compensation." *Id.* (emphasis added).

 Brunke argues that under our holdings in *Johnson, Deuser,* and *Gronroos,* he is entitled to an average weekly wage determination under subsection (3). We agree.[7] Brunke's temporary disability has now ended. When he was released on March 6, 1983, he returned to his job at MAPCO. He worked at the same construction site, for the same hourly rate. But for the injury on October 29, 1982, Brunke would have worked for MAPCO at $24.00 an hour through at least March 6, 1983. On remand the Board should calculate Brunke's average weekly compensation rate under subsection (3).[8]

B. *The Board Correctly Denied Brunke's Claim for Unscheduled Permanent Partial Disability Compensation as Unsupported by Evidence.*

In its February 1984 decision and order, the Board found that while MAPCO was liable for compensation for Brunke's back injury, Brunke had failed to produce evidence of his post-injury earnings. Therefore, the Board denied his claim for compensation. Brunke relies primarily on Dr. Teague's testimony to establish his disability. Teague testified that by applying the AMA disability guidelines he rated Brunke's permanent partial disability as 3% loss of the shoulder, 5% loss of the lower

back and 3% loss of the whole man. [Teague Depo 10] His best "guesstimate" of the possible effect of these figures was that Brunke could lose 5–10 days a year. Brunke argues, therefore, that he is entitled to $2,400.00 per year for the rest of his work life ($24.00 per hour/10 hour work day/10 days a year).

The decisions of this court make it clear that it is the loss of earning capacity and not physical disability per se that is measured when awarding compensation for future losses. As early as 1962 we held that the degree of permanent partial disability was to be calculated by determining loss of earning capacity. "Awards are not to be made for physical injury as such, but for 'disability' produced by such injury. A compensable 'disability' under this section is equated with an impairment of earning capacity." *Manthey v. Collier,* 367 P.2d 884, 888 (Alaska 1962) (footnote omitted). We have continued to apply this definition. *See Hewing v. Peter Kiewit & Sons,* 586 P.2d 182, 185–86 (Alaska 1978); *Vetter v. Alaska Workmen's Compensation Board,* 524 P.2d 264, 266 (Alaska 1974). *See generally* 2 A. Larson, Workmen's Compensation Law, 10–1 to 10–164.173 (1983) (exhaustive discussion of the distinction).

AS 23.30.210 [9] allows the Board to fix a reasonable wage earning capacity if an employee has no actual earnings or if the earnings do not fairly and reasonably represent the wage earning capacity. The statute does not mandate such a determination, however. It states: "the board *may,* in the interest of justice," make such a determination. AS 23.30.210 (emphasis added).

Brunke maintains that the Board erred in not making that determination. Brunke argues that it was the Board's duty to solicit evidence of Brunke's post-injury

---

**7.** In light of both our holding today and previous rulings in *Johnson, Dueser,* and *Gronroos,* we now explicitly overrule *Dupree.*

**8.** In making the "usual wage for similar services," calculation mandated by subsection (3), the Board may consider in its calculations the amount earned by other carpenters working on the same site during the period Brunke was

disabled. This approach would allow MAPCO to present evidence of the actual hours worked by carpenters during the period Brunke would have worked but for the injury, rather than relying on the 60 hour work week which Brunke worked prior to the injury.

**9.** *See supra* note 2.

earnings. He admits that he submitted no such evidence. The Board found that since Brunke has only worked short calls since the accident, "[t]he effects, if any, of his back condition ... are not yet known." The Board apparently placed the burden of producing evidence of loss of earning capacity on Brunke.

■ The explicit language of AS 23.30.-210 does not clarify who bears the burden of proof of lost earning capacity. We have not previously addressed this problem. We have, however, held that "[t]he burden of proof as to each element of the claim is on the claimant," once the employer rebuts the presumption of compensability.[10] *Delaney v. Alaska Airlines*, 693 P.2d 859, 862 (Alaska 1985); *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1049 (Alaska 1978). Other states have interpreted their compensation statute to place the burden upon the claimant. Arizona squarely places the burden on the employee to show loss of earning capacity. *Fremont Indemnity v. Industrial Commission of Arizona*, 144 Ariz. 339, 697 P.2d 1089 (1985) (involving an unscheduled injury which occurred outside Arizona but became part of a subsequent claim). The Arizona court stated: *"the burden is on the injured employee* to show a loss of earning capacity." 697 P.2d at 1095 (emphasis added); *see also Felker v. Industrial Commission of Arizona*, 134 Ariz. 19, 653 P.2d 369 (Ariz.App.1982).

Oregon has also placed the burden of proof on the employee. Recognizing that there was no specific statutory language dealing with the burden of proof, the Oregon court resolved the issue by relying on "traditional notions of burden of proof."

*Compensation of Harris v. SAIF Corp.,* 292 Or. 683, 642 P.2d 1147 (1982). Generally, the proponent of a position bears the burden of producing evidence to prove it. *Id.*

This approach is sensible. Since Alaska relies on earning capacity and not physical impairment, the impact of an unscheduled injury must be proven. The employee can best produce information of his post-injury earnings. It is not an unreasonable or unfair burden to place on the employee. The Board still retains the power to make a separate calculation if justice so requires, pursuant to the statute.[11]

Lacking further evidence the Board correctly denied Brunke's claim. However, because the allocation of the burden of proof on this issue was unclear from the statute and prior case law, on remand Brunke may present any evidence of his loss of earning capacity.[12]

AFFIRMED IN PART, REVERSED IN PART and REMANDED for further proceedings consistent with this opinion.

COMPTON, Justice, concurring.

The doctrine of *stare decisis* requires me to concur in the court's interpretation of AS 23.30.220. However, it does not require me to agree with the analysis proffered to support that interpretation.

I will not belabor my earlier disagreement with the court's interpretation of AS 23.30.220, *see Johnson v. RCA–OMS, Inc.,* 681 P.2d 905, 908 (Alaska 1984) (Compton, Justice, dissenting), but believe a couple of remarks are appropriate.

---

10. *See supra* note 4.

11. *See supra* note 9 and accompanying text.

12. Where the effects of an injury are unclear at the time of the hearing, the employee also has the opportunity to apply to the Board for a modification of an award due to change in conditions. Section 23.30.130(a) allows a modification up to one year after the rejection of a claim. It provides:

> Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions, including, for the pur-

poses of AS 23.30.175 a change in residence, or because of a mistake in its determination of a fact, the board may, before one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or before one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in AS 23.30.110. In accordance with AS 23.30.110 the Board may issue a new compensation order which terminates, continues, reinstates, increases, or decreases the compensation, or award compensation.

Neither *State v. Gronroos*, 697 P.2d 1047 (Alaska 1985), nor *Deuser v. State*, 697 P.2d 647 (Alaska 1985) explain, add to or expand upon the slight variance/substantial disparity analysis created to support the result in *Johnson.* They merely parrot it, as does the court in the case at bar. Though I must accept it, I remain unpersuaded by the *Johnson* analysis, which is used to justify the court's wholesale departure from a statutory framework in which the preference is to determine wage basis on some arbitrary past employment period.[1]

The legislature is free to identify those changed employment circumstances which should receive exceptional treatment. If it chooses, it can return to actual weekly wages as the proper wage basis. It is not for this court to create exceptions, or in effect to resurrect repealed laws.

---

**1.** The court declares that *State v. Dupree*, 664 P.2d 562 (Alaska 1983), is being now overruled. 714 P.2d 795 at 800, n. 7 (Alaska, 1986). Since neither *Gronroos* nor *Deuser* add anything to *Johnson*, I adhere to my dissent in *Johnson* in asserting that it overruled *Dupree.* The court's belated recognition of the consequences of a decision is curious.