1182

Doyle E. GILSTRAP, Appellant,

v.

INTERNATIONAL CONTRACTORS
INC., and The Home Insurance
Company, Appellees.

No. S–5008.

Supreme Court of Alaska.

Aug. 13, 1993.

Charles W. Coe, and Michael R. Smith,
Anchorage, for appellant.

Brooks W. Chandler, Hicks, Boyd, Chandler & Falconer, Anchorage, for appellees.

Before MOORE, C.J., and
RABINOWITZ, BURKE, MATTHEWS and
COMPTON, JJ.

OPINION

PER CURIAM.

The principal issue presented in this appeal is whether "substantial evidence" supports the Alaska Workers' Compensation Board's (Board) valuation of the costs of meals provided to Doyle Gilstrap while he worked for International Contractors, Inc., at a remote work site. *Fairbanks North Star Borough v. Rogers & Babler, Inc.,* 747 P.2d 528, 533 (Alaska 1987) (when reviewing factual determinations, court will not reverse Board's decision where there is "substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion").

Gilstrap challenges the Board's finding that the meals International Contractors furnished to him at Hidden Falls were worth $5.00 a day. Gilstrap argues that the Board erred in basing its valuation on a cost study[1] offered by his employer, because the study, a determination of the price of groceries in Sitka and other Alaska towns, has little bearing on the actual cost of feeding a person doing heavy construction labor at a remote site.

International Contractors argues that the Board reasonably relied on the empiri-

---

1. The cost study (conducted in 1981) put the weekly cost of groceries purchased in Sitka for a man between 20–54 years of age at $24.99.

The Board arrived at the $5.00 per day figure by dividing $24.99 by seven ($3.57) and adding $1.43 per day for transportation costs.

cal study of prices in Sitka, because Sitka is the town nearest to Hidden Falls and the evidence indicated that some of the food was purchased there in fact. The study, it claims, constitutes substantial evidence of Gilstrap's meal costs. International Contractors also points out that after ten years of litigation the Board had to make some finding, and that Gilstrap's testimony and other evidence was not so compelling that the Board acted unreasonably in accepting the cost study.

■ We conclude that the cost study standing alone fails to provide substantial evidence of the true cost of Gilstrap's meals while he worked at Hidden Falls. The Board's decision demonstrates that it failed to figure reasonable transportation and food preparation costs into its calculation of meal costs. The Board awarded Gilstrap $1.43 per day for transportation costs despite the fact that no evidence was

presented at the May 1990 hearing to support this figure. The only evidence of transportation costs presented at the hearing was Gilstrap's testimony that a float plane flew in groceries from Sitka for Gilstrap and his crew: "It was $160 a trip, one or two times a week." The $1.43 transportation cost figure appears to be nothing more than an arbitrary amount which was used to reach the round figure of $5.00 per day.[2]

■ We sympathize with the Board's plight in trying to finally resolve this case even though, by its own admission, "the evidence to support any monetary amount is such that it leads [the Board] into the realm of speculation." *Gilstrap v. International Contractors, Inc.*, AWCB No. 81–00177 (June 13, 1990). Nonetheless, we must once again remand the case for a new hearing to determine meal costs.[3]

2. We do not disagree with the dissent's starting point: "In order to resolve the valuation issue, I believe this court must first determine which party carried the burden of proving the value of the meals provided at Hidden Falls—Gilstrap or his employer." The dissent relies on *Brunke v. Rogers & Babler*, 714 P.2d 795 (Alaska 1986), in arguing that the *employee*—in this case, Gilstrap—shoulders the burden of proof. *Brunke* involved an injured employee's claim for permanent partial disability compensation (PPD). In calculating compensation for a PPD, the Board may fix a reasonable wage if the employee has no actual post-injury wages, or the employee's actual post-injury wages are below the employee's earning capacity. In making this determination, the Board focuses on the employee's actual *post*-injury wages, if any.

In *Brunke* the employee offered no evidence of his actual post-injury wages. The Board denied the employee compensation for lost post-injury wages due to his PPD, apparently placing the burden of proving post-injury wages on the employee. We upheld that allocation of the burden of proof, stating:
Since Alaska relies on earning capacity and not physical impairment, the impact of an unscheduled injury must be proven. The *employee can best produce information* of his *post*-injury earnings. It is not an unreasonable or unfair burden to place on the employee. The Board still retains the power to make a separate calculation if justice so requires, pursuant to the statute.
*Id.* at 801 (emphasis added). *Brunke* placed the burden of proof on the employee because of the employee's unique position with regard to his

*post*-injury wages. In other words, unless the employee continues his post-injury employment with the same employer, the former employer will have almost *no* information regarding the employee's actual post-injury earnings. The employee, conversely, will have this information.
The dissent argues that *Brunke* supports placing the burden on the employee to prove actual *pre*-injury wages. We disagree that the *Brunke* rationale supports this conclusion. The dissent notes that "Gilstrap actually purchased the food for himself and his crew ... and provided for its transportation and preparation." The applicable statute, however, provides that wages include the "reasonable value of board ... *received from the employer.*" Former AS 23.30.-265(20) (emphasis added). The employee is compensated for the value of meals *"received from the employer."* In order to compensate the employee for meals, the employer presumably must receive information regarding the employee's meal expenses. The employer should have roughly the same information as the employee regarding the value of meals *"received from the employer."* Gilstrap is unlike the employee in *Brunke* who could *"best produce"* the relevant evidence. For this reason, *Brunke* does not support shifting the burden of proof regarding the value of pre-injury wages to the employee.

3. Gilstrap argues that the valuation of his meal costs is very significant because the issue of his entitlement to permanent partial disability can be reopened if his meals are valued at a much higher rate. Gilstrap's attempt to bootstrap his way into a new disability classification plainly fails on res judicata grounds as we have already affirmed the Board's denial of his claim for

Gilstrap also appeals the Board's denial of his claim for a modification of his 1986 compensation award to account for alleged mistakes in the calculation of interest and depreciation. We decline to resolve on this record whether Gilstrap is time-barred from bringing his modification claim. *See* AS 23.30.130(a) (explicitly barring modification requests made more than "one year after the date of the last payment of compensation benefits" or more than "one year after the rejection of a claim"). However, we disagree with the Board's conclusion that it was precluded from addressing the claim by the limited scope of the superior court's remand order. Accordingly, we direct the Board to consider Gilstrap's modification request upon remand.

REVERSED and REMANDED.

BURKE, Justice, dissenting.

I respectfully dissent from the court's decision to reverse and remand this case for further proceedings. In order to resolve the valuation issue, I believe this court must first determine which party carried the burden of proving the value of the meals provided at Hidden Falls—Gilstrap or his employer. In *Brunke v. Rogers & Babler,* 714 P.2d 795, 801 (Alaska 1986), we held that "it was not an unreasonable or unfair burden" to require the employee to produce evidence of post-injury earnings. We noted that the employee is generally in the best position to produce this information. *Id.*

In this case, the value of Gilstrap's meals at Hidden Falls are an element of his 1980 pre-injury earnings. *See* Former Alaska Statute 23.30.265(20) (defining "wages" to

include the "reasonable value of board ... received from the employer");[1] *see also* AS 23.30.200 & 23.30.220. While it is appropriate for the employer to carry the burden of producing evidence of an employee's pre-injury earnings when the employer actually controls this information, in this case Gilstrap was the only party with first hand information on the cost of meals at Hidden Falls. Although he has been deemed an "employee" for workers compensation purposes, Gilstrap essentially worked as an independent contractor at the Hidden Falls job site. He purchased the food for himself and his crew and provided for its transportation and preparation. On these facts, I believe *Brunke* supports the conclusion that Gilstrap carried the burden of proving the cost of his meals at Hidden Falls.[2]

The record reveals that Gilstrap's evidence at the 1990 hearing was no more substantial than his former employer's evidence. Nonetheless, the court is today giving Gilstrap another hearing despite the fact that he failed to present the Board with sufficient evidence the first time around.

In the divorce setting, where neither party carries a specific burden of proof, we have consistently refused to set aside factual findings when the party challenging the finding failed to present sufficient evidence at trial. *See Miles v. Miles,* 816 P.2d 129, 132 (Alaska 1991); *Hartland v. Hartland,* 777 P.2d 636, 639–40 (Alaska 1989). In *Hartland,* we rejected substantially the same argument which Gilstrap has made in this case:

duction in establishing the existence of a compensable disability. *Id.* at 474. In this case, the Board had already determined that Gilstrap had suffered a compensable disability and was entitled to temporary partial disability benefits. The only issue before the Board in 1990 was the meal cost figures which were to be used in establishing those benefits. On this issue, I believe *Brunke* is the more useful precedent. *See Kramer,* 807 P.2d at 474 ("In *Brunke,* we were concerned with the employee/claimant's obligation to present evidence concerning his current earning capacity so that the Board could make a reasoned assessment of his lost earning capacity....").

permanent partial disability. *See Gilstrap v. International Contractors, Inc.,* Mem.Op. & J. No. 448 (Alaska, April 26, 1989).

1. Former AS 23.30.265(20) still controls this case as Gilstrap's injury occurred in 1980. The legislature repealed this section while Gilstrap's case was proceeding through the appellate process.

2. I am not dissuaded from this view by our decision in *Wien Air Alaska v. Kramer,* 807 P.2d 471 (Alaska 1991), which held that employees may rely on the presumption of compensability, AS 23.30.120(a)(1), to meet their burden of pro-

[Hartland] argues that the valuations of the parties' retirement benefits are unjust because the court should have recognized the insufficiency of the evidence presented and required additional evidence before attempting to value these benefits. This argument is without merit.

*Id.* at 639. In *Miles*, we refused to set aside a trial court's factual finding for reasons which are equally applicable to the case before us:

> As neither party was able to produce documentation of the actual payments on the property, there is no reason to conclude that the superior court's finding was clearly erroneous. A party who fails to present sufficient evidence at trial should not be allowed to challenge the inadequacy of evidence on appeal.

*Miles*, 816 P.2d at 132 (citations omitted). On policy grounds, I fail to see how the present case can be distinguished from *Hartland* and *Miles*. Given the insubstantial evidence Gilstrap presented, I do not believe the Board should be faulted for arriving at some meal cost figure, even if the figure appears somewhat low.

It is also a great waste of judicial resources to remand this case to the Board once again when the amount in dispute is so small.[3] I recognize that this amount does not qualify as "de minimis" under our prior rulings. *Compare Scavenius v. City of Anchorage*, 539 P.2d 1161, 1165 (Alaska 1975) (the difference between $0.00 compensation and nominal damages is de minimis) *with Wickwire v. City & Borough of Juneau*, 557 P.2d 783, 786 (Alaska 1976) (this court remanded for a hearing on damages even though the amount of damages could not possibly exceed $100.00). Nonetheless, the relative insignificance of the claim when compared to the costs of a remand should spur this court to avoid a remand if at all possible.[4]

Aside from the meal cost valuation which I would affirm, the only issue is whether the Board properly refused to address Gilstrap's claim for a modification of his compensation rate to account for alleged interest and depreciation mistakes in the Board's 1986 compensation award. I agree with the court that the Board erred in relying on the scope of the remand order as the reason for refusing to address his claim. Nonetheless, the legal arguments supporting Gilstrap's claim are unconvincing and should be dismissed as a matter of law.

As International Contractors argues on appeal, the "mistakes" which Gilstrap claims occurred in the Board's 1986 wage calculation are not true miscalculations or mistakes of fact at all; Gilstrap is actually arguing for the inclusion of additional elements into the wage calculation process. These are legal arguments which should have been raised before the Board in 1986. *See Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1987) ("It is clear that an allegation of mistake should not be allowed to become a back-door route to retrying a case because one party thinks he can make a better showing on a second attempt.") (quoting 3 Larson, *The Law of Workmen's Compensation* § 81.52 at 354.8 (1971)).

---

3. At the Board hearing, Gilstrap argued that his meals at Hidden Falls should be valued at $43.33 per day. The employer argued for the $5.00 per day figure. Because Gilstrap only worked at the Hidden Falls site for 60 days, the difference in the two figures (i.e. $43.33 × 60 = $2,599.00 and $5.00 × 60 = $300.00) amounts to $2,199.00. However, Gilstrap is not entitled to recover his meal costs outright; they are simply added to his 1980 earnings for the purpose of calculating his temporary partial disability benefits. *See* AS 23.30.200, 23.30.220 & (former) AS 23.30.265(20). Thus, the actual benefit Gilstrap would gain from a higher meal cost figure is less than $2,199.00.

4. Noting the great time and effort already spent on a case involving no significant principle or substantial sum, Justice Boochever commented in his dissent in *Wickwire* that it was the type of case that "Dickens must have had in mind when he had Mr. Bumble state 'the law is an ass—an idiot.'" *Id.* at 786 (Boochever, J. dissenting). Gilstrap's workers' compensation case has gone on for more than ten years and has been to this court twice before. Another remand from our court over such a small amount will no doubt invite Alaskans to echo Mr. Bumble's assessment of the legal system.

Furthermore, the language of AS 23.30.-130(a), the statute upon which Gilstrap based his modification claim, explicitly time-bars modification requests made more than "one year after the date of the last payment of compensation benefits." International Contractors asserts that the "last payment of compensation benefits had been made to Gilstrap more than three years before he first raised the claimed 'mistake.' " Gilstrap does not dispute this statement but only argues that the modification request was "still timely because the underlying case was under appeal for a number of years prior to this."

Neither AS 23.30.130(a) nor our cases interpreting the statute provide that the limitations period is tolled while a workers' compensation award is being appealed. As we have previously held, "[A] modification proceeding under AS 23.30.130(a) 'originates in the initial claim for compensation.' ... [and] invokes the Board's jurisdiction over the original claim." *Hulsey v. Johnson & Holen*, 814 P.2d 327, 328 (Alaska 1991) (quoting in part *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 167 (Alaska 1974)). If a mistake was made in the original decision, sound policy dictates that the party negatively affected by the mistake bring the matter to the Board's attention in an expeditious manner. As I read the statute, this means no later than one year after the final compensation payment is made *under the original award.*

If a party were excused from this obligation simply because an appeal was proceeding from the original award so that the *possibility* of further compensation existed, the Board's final decision would hang in limbo for an indeterminate period of time. This result is unnecessary because, by definition, a "mistake" or "change in conditions" must be completely independent of the issues on appeal to even qualify as a valid basis for modification. *See Fischback & Moore of Alaska v. Lynn*, 453 P.2d 478 (Alaska 1969) (to justify modification on the basis of mistake, the subsequent showing must be something more than a reiteration or reassessment of facts or positions previously known or established).

Therefore, because a party is not hindered during an appeal from bringing the modification request to the board's attention, the limitations period for bringing the request should not be tolled during the pendency of the appeal. For the reasons stated above, I would affirm the denial of Gilstrap's modification claim.